## STATE OF CONNECTICUT *v.* TYSON HUNTER
### (AC 19570)

Zarella, Pellegrino and Hennessy, Js.

Argued December 7, 2000—officially released April 17, 2001

*Alexander H. Schwartz*, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Maureen M. Keegan*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Tyson Hunter, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-

54a. On appeal, the defendant contends that the trial court improperly denied him his constitutional rights to confrontation and to present a defense. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the afternoon of October 12, 1997, Clarence Lewis borrowed a gray Toyota Corolla from Ametreus "Cheryl" Hofler to run some errands. From that point on, the car was lent to several other people throughout the afternoon, night and early morning.[1] It was driven around the streets of Waterbury and was never returned to Hofler. Meanwhile, a Ford Escort that was owned by the victim, Addies Grimsley, also was being driven around the streets of Waterbury and was occupied by several different people throughout that afternoon, night and early morning.[2] Sometime after 8 p.m., the operator of the Ford initiated a chase between the two cars by speeding past the Toyota a couple of times. This confrontation ended without incident.

At approximately 11:30 p.m., a witness, Steven Dunbar, was walking his dog outside his Harris Circle home when he noticed Damian Ellis, one of the many passengers of the Toyota,[3] carrying a black book bag. Dunbar testified that he believed that the book bag contained firearms and that Ellis had given the book bag to "some guys" in a gray Toyota. Dunbar also testified that "[the

---

[1] Throughout the afternoon and evening of October 12, 1997, and the early morning of October 13, 1997, the following people were in the gray Toyota Corolla at one point or another: Clarence Lewis; Shawayne Hunter; Stacy Germaine Lott; Robert Tremaine Kelly; Kyle Brewer; Terrence Stevens; Leroy "Bub" Addison; Jerome "Pete" Wilson; Damian "Dame" Ellis; Jesus Alvarez; and the defendant.

[2] Throughout the afternoon and evening of October 12, 1997, and the early morning of October 13, 1997, the following people were in the Ford Escort at one point or another: Efrem "Duke" Collins, Jr.; Seion Hernandez; Garland Hunter; Malaki Jordan; Eric MacIntosh; James Butler; Jason Hawk; and Addies Grimsley.

[3] See footnote 1.

defendant] and them" were in the Toyota and that he had contacted the Waterbury police to warn them that "somebody was going to get hurt."

Sometime around midnight, the occupants of the two cars once again approached each other in their vehicles. At this point, Jesus Alvarez was driving the Toyota, and the defendant occupied the front passenger seat. Jason Hawk was driving the Ford, Efrem Collins was the front seat passenger, and the victim was the backseat passenger. When the occupants of the Ford noticed that the Toyota was following them, Collins turned to look and recognized Alvarez as the driver of the Toyota.[4] As Hawk sped up in an attempt to get away from the Toyota, the occupants of the Toyota fired shots at the Ford, shattering its rear window.

Hawk drove the Ford into the Harris Circle projects near Long Hill Road with the Toyota in pursuit. Hawk then jumped out of the moving car and ran into the woods, leaving both Collins and the victim behind. The Ford crashed into a guardrail and pinned the front passenger door shut. Collins remained safely in the car, but, as the victim exited the car, at least five more shots were fired at him. After the gunfire stopped and Alvarez drove the Toyota away, Collins exited the car through the rear window and ran away into the woods.

Officer David Rovinetti of the Waterbury police department was called to the scene and found the victim bleeding heavily next to the Ford. The victim had been shot several times and bled to death from a bullet that struck his upper thigh, cut his femoral artery and tore a large hole in an adjacent vein.

On Tuesday, October 14, 1997, the police interviewed Alvarez, who provided them with a detailed written

---

[4] On October 14, 1997, Collins identified Alvarez as the driver of the Toyota from an eight person photographic array.

statement. He admitted to driving the Toyota and identified the defendant as a passenger in the Toyota. He claimed that after the Ford had come to a stop, the defendant fired more than ten shots and that he had heard the victim yell, "I've been hit." Alvarez also selected the defendant from an eight person photographic array. Alvarez subsequently pleaded guilty to a charge of conspiring with the defendant to commit murder and, in November, 1998, he was sentenced to a ten year term of imprisonment.

At the defendant's trial, the state called Alvarez to testify. When questioned, Alvarez could not recall the events that had transpired on October 12 and October 13, 1997, but he acknowledged that he had initialed and signed his October 14, 1997 sworn written statement to the police. He testified, however, that he had never read it, had been under the influence of drugs when he had signed it and that the police had coerced him into signing it. He also testified that he was not involved in the murder and that he did not see the defendant on the day of the murder. At the conclusion of Alvarez's direct testimony, the court admitted his written statement for substantive purposes under the *Whelan* doctrine.[5]

On cross-examination, the defendant questioned Alvarez about his whereabouts on the night in question and his written statement. Alvarez testified that he was not involved in the car chases or the shootings and described to the jury, in detail, where he was on the night of the victim's murder. Alvarez claimed that he was with friends on Laurel Street until approximately

[5] See *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). A prior inconsistent statement may be used at trial for substantive as well as impeachment purposes where the statement is signed by a declarant, who has personal knowledge of the facts stated therein, and who testifies at trial and is subject to cross-examination. Id., 753.

midnight, when he was driven to a convenience store. He also testified that his attorney had obtained a copy of a video surveillance tape from the convenience store that showed that he was there around midnight.[6]

During the defendant's case-in-chief, the defendant expressed an intention to call several people to testify as alibi witnesses for Alvarez. The state requested an offer of proof, and the defendant replied that the alibi witnesses and the tape would corroborate Alvarez's testimony. The court, however, did not allow any of the defendant's alibi witnesses[7] to testify and did not allow the introduction of the convenience store video surveillance tape into evidence.

On appeal, the defendant first claims that the court improperly denied him his constitutional right to confrontation. Specifically, he claims that the court improperly prevented him from fully and fairly exercising his constitutional right to confront and to cross-examine the state's key witness, Alvarez. We disagree.

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there is an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law

---

[6] This tape was never marked for identification at the defendant's trial and, therefore, is not part of the record on this appeal.

[7] The defendant had four alibi witnesses prepared to testify and corroborate Alvarez's trial testimony. They were Karen White, Shakeya Davis, Aerial Rivera and either White's mother or daughter.

. . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *State* v. *Cramer*, 57 Conn. App. 452, 454, 749 A.2d 60, cert. denied, 253 Conn. 924, 754 A.2d 797 (2000), quoting *State* v. *Orhan*, 52 Conn. App. 231, 237, 726 A.2d 629 (1999).

"The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him." (Internal quotation marks omitted.) *State* v. *Price*, 61 Conn. App. 417, 428, 767 A.2d 107, cert. denied, 255 Conn. 947, 769 A.2d 64 (2001). "The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . . In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial. . . . [T]he denial of all meaningful cross-examination into a legitimate area of inquiry fails to comport with constitutional standards under the confrontation clause." (Citations omitted; internal quotation marks omitted.) *State* v. *Jones*, 60 Conn. App. 866, 869–70, 761 A.2d 789 (2000), cert. denied, 255 Conn. 942, 769 A.2d 59 (2001); see also *State* v. *Newton*, 59 Conn. App. 507,

520, 757 A.2d 1140, cert. denied, 254 Conn. 936, 761 A.2d 764 (2000).

In this case, the court did not infringe on the defendant's constitutional right to confrontation. Alvarez was the state's key witness and he recanted the entire written statement that he had given to the Waterbury police on October 14, 1997. During direct examination, the state questioned Alvarez about his statement. He testified that he did not read the statement before he signed it, he was under the influence of drugs, the police coerced him to sign it and he was not with the defendant on the night the victim was killed. The defendant cross-examined Alvarez immediately after the state concluded its direct examination. On cross-examination, the defendant inquired about Alvarez's whereabouts on the afternoon and evening of October 12 and the morning of October 13, 1997. The defendant questioned the witness in detail, and the witness stated his alibi to the jury. His answers were clear and specific.

The defendant had an opportunity to cross-examine fully and fairly the witness and did so. He specifically inquired about the witness' whereabouts on the night in question, and the witness was allowed to answer freely. We, therefore, conclude that the court did not abuse its discretion because it did not deny or unduly restrict the defendant's constitutional right to cross-examine the witness.

The defendant next claims that the court improperly denied him his constitutional right to present his defense by excluding the exhibit and witnesses that he offered to support an alibi for the state's key witness, Alvarez. Specifically, the defendant argues that the court improperly excluded the convenience store video surveillance tape and the testimony of Alvarez's alibi witnesses. We disagree.

We reiterate our standard of review regarding challenges to a court's evidentiary rulings. Evidentiary rulings will be overturned on appeal only when there is an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. *State* v. *Cramer*, supra, 57 Conn. App. 454.

The defendant argues that the excluded evidence was relevant for the jury to assess the reliability of the state's key witness. Admissible evidence must be logically and legally relevant. *State* v. *Joly*, 219 Conn. 234, 260–61, 593 A.2d 96 (1991). "It is not logical relevance alone, however, that secures the admission of evidence. Logically relevant evidence must also be legally relevant . . . that is, not subject to exclusion for any one of the following prejudicial effects: (1) where the facts offered may unduly arouse the jury's emotions, hostility or sympathy, (2) *where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues,* (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it. [C.] McCormick, Evidence (2d Ed.) § 185, pp. 439–40." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Joly*, supra, 260–61.

In this case, the court ruled that the alibi witnesses for Alvarez and the convenience store video surveillance tape were not relevant. When the defendant tried to introduce his first witness to corroborate Alvarez's testimony, the court explained that "[i]t's not relevant to the case . . . . [W]e have to conclude cases when we start them. I don't think we can keep going off and branching off and get everybody else to come in and say yes they saw her with another witness. . . . [Alvarez] has testified, the jury can believe [him] or not believe [him]." The court then ruled that the proposed

testimony of Alvarez's alibi witness was "beyond the scope of this particular trial. It starts another trial within a trial." The defendant next informed the court that he wanted to introduce other alibi witnesses to testify for Alvarez and to introduce the convenience store video surveillance tape to corroborate Alvarez's testimony.[8] The court also denied that request.

The court did not abuse its discretion by not allowing this evidence because it was not legally relevant. The admission of this evidence would have created a side issue that would have unduly distracted the jury from the main issue. By allowing the admission of this evidence and the examination of the alibi witnesses proposed by the defendant, the court would have opened the door to several trials within a trial. We, therefore, conclude that the court did not abuse its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.