STATE OF CONNECTICUT *v.* STEVIE CLARK
(AC 18775)

Schaller, Dranginis and Daly, Js.

of the identity of the defendant as the one who committed the crime or you must find him not guilty."

Argued September 26, 2001—officially released February 5, 2002

*Karen T. Staib*, special public defender, with whom was *Sheila A. Huddleston*, special public defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *John F. Fahey* and *Robin Cutuli*, assistant state's attorneys, for the appellee (state).

*Opinion*

DALY, J. The defendant, Stevie Clark, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a.[1] On appeal, the defendant claims that the trial court improperly (1) excluded evidence regarding the defendant's knowledge about his father's death and (2) instructed the jury on the elements of self-defense. We affirm the judgment of the trial court.

---

[1] General Statutes § 53a-55a provides in relevant part: "A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. . . ."

The jury reasonably could have found the following facts. On June 25, 1996, New Britain police officers were dispatched to 66 Richard Street to investigate a shooting. Upon arriving at the scene, the officers found the victim, John Bazemore, on the ground, bleeding from his head and chest.[2] A canvass of the area led the police to suspect that the defendant was the perpetrator. On the basis of the information that they obtained, the police went to the defendant's residence to question him, but he was not present. A police canine traced the defendant's scent to a nearby tree, where the police found the defendant. While descending from the tree, the defendant reportedly stated, "I did it. I shot John." Subsequently, the police arrested the defendant and informed him of his *Miranda*[3] rights. The defendant waived his *Miranda* rights and cooperated with the police for approximately forty-five minutes until his counsel informed the officers that the conversation was to cease until he arrived.

At trial, the defendant and eyewitnesses gave the following account of the events that led to the shooting. Shortly after 10 p.m., on June 25, 1996, the defendant left his apartment to go to the area of 66 Richard Street, where his girlfriend lived. En route, the victim, who appeared intoxicated, stopped the defendant. The victim asked the defendant if he had any crack cocaine in his possession because he knew of an individual who wanted to purchase it. The defendant handed three packages of crack cocaine to the victim, each with a value of $20. After a short period of time, the victim returned without the crack cocaine and gave the defendant $25, claiming that he sold the drugs at a reduced rate because the buyer "was a good guy." Believing

---

[2] The victim subsequently died after being transported to New Britain General Hospital.

[3] See *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

that the victim was still in possession of the drugs, the defendant became angry. Because of the defendant's prior experiences with the victim, however, the defendant did not pursue the issue at that time.[4]

Shortly after the defendant arrived at 66 Richard Street, the victim appeared. He angrily accused the defendant of causing him trouble because of the earlier drug transaction. An altercation between the defendant and the victim ensued in which the victim pushed the defendant several times.[5] The defendant then left the scene for a period of five to ten minutes. When he returned, the victim became angry again, yelled at the defendant and pushed him. The defendant then "swore on his father's grave" that if the victim laid his hands on him again, he would shoot him. The defendant pulled a .380 caliber semiautomatic pistol from his waistband when the pushing and yelling continued.[6] Upon seeing the weapon, the victim stated to the defendant that "he better be prepared to use it or else he would take it away from him, along with everything else he had." The defendant returned the pistol to his waistband, but the yelling persisted. After being pushed again, the defendant removed the gun from his waistband and fired three bullets at the victim, hitting him in the chest and chin. Additional facts will be discussed as necessary to the issues raised.

I

The defendant claims that the court (1) abused its discretion in excluding relevant and probative evidence,

---

[4] The defendant testified that he had a history of physical and verbal encounters with the victim, including an occasion when the victim lifted the defendant above his head and threatened to slam him to the ground.

[5] The defendant also claimed that the victim put his hands around his neck, but an eyewitness disputed that account at trial.

[6] The defendant told police that he discarded the weapon at the base of a tree near his mother's house. A subsequent search of the area failed to recover the gun.

(2) violated his constitutional right to present a defense by excluding evidence of his knowledge of the manner of his father's death and (3) committed harmful error when it prevented the defendant from introducing the excluded evidence during the trial. Specifically, the defendant argues that evidence relating to his father's death should have been admitted at trial to show (1) his subjective perception that the victim's physical aggression was likely to cause the defendant grievous bodily harm and (2) his state of mind at the time of the shooting. We are not persuaded.

At trial, the defendant sought to introduce the following evidence. The defendant's father died in 1980 when the defendant was less than two years old. There is some dispute regarding the circumstances that led to the death of the defendant's father and how those events were relayed to the defendant. The defendant's mother, in recounting the events to the defendant, apparently had combined two different events that occurred during a four week period. The first incident occurred at a pool hall where the defendant's father was struck in the head with an instrument.[7] About one month later, two individuals got into a fight with the defendant's father. During that altercation, the defendant's father was struck in the head by his attackers with their fists and fell to the ground, striking his head on concrete. After the fight, the defendant's father was taken to a hospital and later released. He died the following day, however, from a blood clot. As a result of his father's death, the defendant's mother repeatedly warned the defendant to stay away from fights or other activities that could result in head injuries. The court excluded that evidence, stating that it was legally irrelevant because its prejudicial effect outweighed its probative value.

---

[7] It was reported that the instrument that struck the defendant's father was either a pool stick or a baseball bat.

## A

The defendant claims that the court abused its discretion in excluding the evidence. We disagree.

"The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Hall*, 66 Conn. App. 740, 755, 786 A.2d 466 (2001), cert. denied, 259 Conn. 906, 789 A.2d 996 (2002).

"Evidence is admissible only if it is relevant. . . . Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . It is well settled that questions of relevance are committed to the sound discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *State* v. *Talton*, 63 Conn. App. 851, 856, 779 A.2d 166, cert. denied, 258 Conn. 907, 782 A.2d 1250 (2001); see also 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 67c, pp. 504–505. "Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Internal quotation marks omitted.) *State* v. *Rolon*, 257 Conn. 156, 177, 777 A.2d 604 (2001).

"Logically relevant evidence must also be legally relevant . . . that is, not subject to exclusion for any one

of the following prejudicial effects: (1) where the facts offered may unduly arouse the jury's emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." (Internal quotation marks omitted.) *State* v. *Hunter*, 62 Conn. App. 767, 774, 772 A.2d 709, cert. denied, 256 Conn. 925, 776 A.2d 1144 (2001). "Where the prejudicial effect of logically relevant evidence outweighs its probative value, the trial court has wide latitude to exclude the evidence as legally irrelevant . . . ." *State* v. *Joly*, 219 Conn. 234, 261, 593 A.2d 96 (1991).

We conclude that the court did not abuse its discretion when it excluded the evidence concerning the death of the defendant's father because it was more prejudicial than probative. The probative value of the proffered testimony is minimal in light of the other evidence that the court admitted during the course of the trial. The defendant's purpose in offering the evidence was to inform the jury as to why he feared an attack by the victim. The jury, however, heard testimony that the defendant suffered a series of concussions during his lifetime and that he had an asthmatic condition, each of which it was argued caused the defendant to be frightened of head injuries.

Although the probative value of the evidence was slight, the prejudicial effect of admitting such evidence would have been great. As the court noted, "the prejudicial effect is very strong in terms of arousing sympathy and emotion with reference to a young man whose father . . . died . . . ." Because the probative value of the evidence was outweighed by its prejudicial

impact, the court did not abuse its discretion in ruling that it was inadmissible.

B

The defendant further claims that the exclusion of the testimony had the effect of denying him his fundamental constitutional right to present a defense. We reject the defendant's claim.

"The sixth amendment right to compulsory process includes the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. . . . When defense evidence is excluded, such exclusion may give rise to a claim of denial of the right to present a defense. . . . A defendant is, however, bound by the rules of evidence in presenting a defense. . . . Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes. . . . If the proffered evidence is not relevant, the defendant's right to confrontation is not affected, and the evidence was properly excluded." (Citation omitted; internal quotation marks omitted.) *State* v. *King*, 249 Conn. 645, 668, 735 A.2d 267 (1999).

As we discussed in part I A, the evidence relating to the death of the defendant's father was not legally relevant to this case. Because the court properly excluded the evidence, the defendant's right to confrontation was not violated by the court's decision.

C

The defendant also argues that the court's decision to exclude the evidence relating to his father's death

constituted harmful error because it harmed his ability to present his defense. That claim is without merit. To establish harmful error, the defendant must establish either that (1) it was more probable than not that the erroneous action of the court affected the result or (2) the prejudice resulting from the court's decision was so substantial as to undermine confidence in the fairness of the verdict. *State* v. *Marshall*, 246 Conn. 799, 812, 717 A.2d 1224 (1998). In this case, the defendant has failed to establish either element and, as such, his claim that the court's decision to exclude the evidence was harmful error must fail.

## II

The defendant's second claim is that the court misled the jury when it instructed the jury on the elements of self-defense.[8] We are not persuaded.

The following additional facts are relevant to our resolution of the defendant's claim. During the initial charge to the jury, the court stated: "If you find proven beyond a reasonable doubt that the victim, John Bazemore, was not using or about to use deadly physical force as I have defined that term for you or not inflicting or about to inflict bodily harm upon the defendant, Stevie Clark, and if you further find proven beyond a reasonable doubt that the defendant had no reasonable belief

---

[8] The defendant did not preserve his claim at trial and now seeks to have it reviewed under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. Because the defendant's claim is of constitutional magnitude and the record is adequate for review, we will review the defendant's claim under *Golding*.

that the victim, John Bazemore, was using or about to use deadly physical force or inflicting or about to inflict great bodily harm upon the defendant, then the defendant would not be justified in using deadly physical force upon the victim."

In response to the defendant's objection to the jury charge, the court reinstructed the jury on the issue of self-defense. After reviewing the contested language with the jury, the court stated: "I wish to further clarify that by pointing out to you and instructing you that the issue, the question in such regard is not whether the victim, John Bazemore, intended to use deadly physical force or intended to inflict great bodily harm, but rather, the issue is whether the defendant, Mr. Clark, under the circumstances, reasonably believed that Mr. Bazemore intended to use deadly force or inflict great bodily harm."

While deliberating, the jury asked the court to reread its instructions on the issue of self-defense. In restating its instructions, the court read both the charge that was initially contested and the curative charge. Additionally, the court stated: "The self-defense statute, ladies and gentlemen, focuses on the person claiming self-defense; that is, the defendant. It focuses on what he reasonably believed under the circumstances and presents a question of fact for the jury. In other words, what is important is what the defendant reasonably believed under the circumstances. The test for the degree of force in self-defense is a subjective-objective test. It has some subjective aspects and some objective aspects." It is the defendant's contention that the jury was misled when the court repeated the objectionable portion of the charge.

"Our standard of review on this claim is whether it is reasonably probable that the jury was misled. . . . The test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court

of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted.) *State* v. *Solek*, 66 Conn. App. 72, 88, 783 A.2d 1123, cert. denied, 258 Conn. 941, 786 A.2d 428 (2001). "The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . While the instructions need not be exhaustive, perfect or technically accurate, they must be correct in law, adapted to the issues and sufficient for the guidance of the jury." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 47 Conn. App. 91, 95, 702 A.2d 906 (1997), cert. denied, 243 Conn. 960, 705 A.2d 552 (1998).

The crux of the defendant's claim is that the court misled the jury when it charged the jury on the subjective-objective test as stated in General Statutes § 53a-19 (a).[9] "The subjective-objective inquiry into the defendant's belief regarding the necessary degree of force requires that the jury make two separate affirmative determinations in order for the defendant's claim of self-defense to succeed. First, the jury must determine whether, on the basis of all of the evidence presented, the defendant in fact had believed that he had needed to use deadly physical force, as opposed to some lesser degree of force, in order to repel the victim's alleged attack. . . . The jury's initial determination, therefore,

[9] General Statutes § 53a-19 (a) provides in relevant part: "[A] person is justified in using reasonable physical force upon another person to defend himself . . . from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm."

requires the jury to assess the veracity of witnesses, often including the defendant, and to determine whether the defendant's account of his belief in the necessity to use deadly force at the time of the confrontation is in fact credible. This probe into the defendant's actual state of mind clearly demonstrates the function of the jury in [its] evaluation of the self-defense claim." (Internal quotation marks omitted.) *State* v. *Scarpiello*, 40 Conn. App. 189, 206, 670 A.2d 856, cert. denied, 236 Conn. 921, 674 A.2d 1327 (1996).

"If the jury determines that the defendant had not believed that he had needed to employ deadly physical force to repel the victim's attack, the jury's inquiry ends, and the defendant's self-defense claim must fail. If, however, the jury determines that the defendant in fact had believed that the use of deadly force was necessary, the jury must make a further determination as to whether that belief was reasonable, from the perspective of a reasonable person in the defendant's circumstances." Id., 206–207.

After carefully examining the court's charge, we conclude that it is not reasonably possible that the jurors were misled when the court instructed them on the subjective-objective test of self-defense. When the court charged the jury on the issue of self-defense, it read § 53a-19 (a) twice. In addition, the court described to the jury the subjective-objective test that is at issue in this appeal. Throughout its explanation of self-defense, the court repeatedly emphasized that there were two aspects of the self-defense statute that the jury must decide, one subjective and one objective. Because we conclude that the jury was not misled by the court's charge, the defendant's claim fails under the third prong of *Golding* because he has failed to clearly establish that a constitutional violation exists.

The judgment is affirmed.

In this opinion the other judges concurred.