STATE OF CONNECTICUT *v.* ROLANDO CRUZ
(AC 22575)

Foti, Mihalakos and Dranginis, Js.

Argued October 21, 2002—officially released March 11, 2003

*Alice Osedach-Powers*, assistant public defender, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David J. Strollo*, senior assistant state's attorney, for the appellee (state).

DRANGINIS, J. The defendant, Rolando Cruz, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[1] On appeal, the defendant claims (1) that the trial court improperly instructed the jury on the issue of self-defense and (2) that the state failed to adduce evidence sufficient to disprove that he was acting in self-defense. We affirm the judgment of the trial court.

The jury reasonably could have found that following facts. On a Thursday evening in late July, 1999, the defendant went to Gecko's, a nightclub in New Haven. While at Gecko's, the defendant was having a conversation with a woman, Adrienne DeLeon. At some point during their conversation, the defendant and DeLeon were approached by DeLeon's then boyfriend, Joseph Martinez. Martinez, who believed that the defendant was flirting with DeLeon, threw a drink in her face and began screaming at DeLeon and at the defendant. Martinez and the defendant engaged in a verbal dispute, but no physical altercation occurred between the two men that night.

On the following Sunday night, August 1, 1999, the defendant was at Humphrey's restaurant in New Haven. Martinez also was at Humphrey's that night with his friend, Peter Gaudioso. After seeing the defendant from across the room, Martinez pointed out the defendant to Gaudioso and informed him of the verbal altercation that he had had with the defendant only a few nights before. Gaudioso suggested that he and Martinez leave

---

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

the restaurant to avoid another altercation. Shortly thereafter, Gaudioso and Martinez exited the front door of the restaurant where they encountered the defendant, who was standing outside talking on his cellular telephone. Martinez approached the defendant because he thought he heard the defendant call him a derogatory name. The two men began to argue. The defendant told Martinez: "You don't want to do this, you will regret it for the rest of your life." Shortly thereafter, punches began to be thrown by both men. The fight spilled over into the parking lot of the restaurant, between two parked cars. At some point during the fight, the defendant took a knife out of his pocket, stabbed Martinez once in the stomach and then ran away. The fight had lasted only a matter of minutes. At that time, the defendant was twenty-five years old, six feet, one inch tall and weighed 190 pounds. Martinez was twenty years old, six feet, two inches tall and weighed approximately 240 pounds.

Martinez was taken to a hospital by ambulance where doctors performed emergency surgery to repair a stab wound to his abdominal area. On the surface, his wound measured about four inches wide and was approximately six to eight inches deep. The wound, which exposed Martinez's intestines, could have been fatal had it not been treated immediately.

The defendant subsequently was arrested and charged with one count of assault in the first degree in violation of § 53a-59 (a) (1)[2] and, in the alternative, one count of assault in the first degree in violation of § 53a-59 (a) (3).[3]

---

[2] See footnote 1.

[3] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

Months after his arrest, during the spring of 2001, the defendant surrendered a knife, which he claimed was the knife he had used to stab Martinez, to an investigator who was employed by the defendant's attorney. That knife, which had a two inch blade, eventually was turned over to the police and was introduced at trial. The state, however, disputed that the knife with the two inch blade was the knife the defendant had used to stab Martinez. During its case-in-chief, the state offered the testimony of Edward T. McDonough, deputy chief medical examiner for the state of Connecticut. McDonough testified that Martinez's injuries were consistent with a stabbing by a knife or other sharp object that would have to have been, at a minimum, about six inches in length. During cross-examination, the defendant admitted that he had, in the past, carried knives with much larger blades.

At trial, the defendant claimed that he was acting in self-defense when he stabbed Martinez and, therefore, his use of force was justified. See General Statutes § 53a-19.[4] The defendant testified that he stabbed the

---

[4] General Statutes § 53a-19 provides in relevant part: "(a) Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating . . . .

"(c) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force . . . ."

victim, but that he believed that his use of force was necessary to defend himself from the victim's attack. During its deliberations, the jury asked to hear the legal definition of self-defense again. The jury returned a guilty verdict on the charge of assault in the first degree in violation of § 53a-59 (a) (1) and a verdict of not guilty on the charge of assault in the first degree in violation of § 53a-59 (a) (3). After the jury's verdict, defense counsel filed a motion for a judgment of acquittal in which he claimed that the evidence adduced at trial established that the defendant had acted in self-defense and that the state had failed to adduce evidence sufficient to disprove self-defense. In denying the defendant's motion, the court determined that if the jury had accepted the testimony of Martinez, the defendant's self-defense claim was disproved beyond a reasonable doubt. Additional facts will be set forth where necessary.

I

The defendant claims that the court improperly instructed the jury on the issue of self-defense. He advances three arguments in support of his claim. He argues that the court's instruction on self-defense improperly (1) limited the jury's inquiry to determining whether he was justified in using deadly physical force, (2) advised the jury as to how to evaluate his use of force and (3) advised the jury that its duty was to determine whether the victim was about to use force or was inflicting injury against the defendant prior to determining whether the defendant reasonably believed the victim was doing so. The defendant asserts that the court's improper instructions on self-defense deprived him of his constitutionally guaranteed rights to present a defense, to due process and to a fair trial under the sixth and fourteenth amendments to the constitution of the United States.[5]

[5] The defendant also claims a violation of his rights under article first, § 8, of the constitution of Connecticut. "We have repeatedly apprised litigants

At the outset, we note that the defendant did not properly preserve the claims of improper jury instruction that he now raises on appeal. Moreover, the defendant has conceded in his brief that he induced two of the alleged errors by requesting the very instructions that he now claims were constitutionally infirm. He maintains that all three of his claims are, nonetheless, reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[6] or, in the alternative, under the plain error doctrine. See Practice Book § 60-5.[7] We agree that the defendant's claims, including those that are the product of induced error, are reviewable under *Golding*.[8]

---

that we will not entertain a state constitutional claim unless the [party] has provided an independent analysis under the particular provisions of the state constitution at issue . . . ." (Internal quotation marks omitted.) *State* v. *Holmes*, 257 Conn. 248, 252 n.4, 777 A.2d 627 (2001), cert. denied, 535 U.S. 939, 122 S. Ct. 1321, 152 L. Ed. 2d 229 (2002). Because the defendant has provided no independent analysis of his claims under the state constitution, we limit our review of the issues to the defendant's claims under the United States constitution. See, e.g., *State* v. *Schiappa*, 248 Conn. 132, 136–37 n.9, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999).

[6] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40. "The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Internal quotation marks omitted.) *State* v. *Wickes*, 72 Conn. App. 380, 384–85, 805 A.2d 142, cert. denied, 262 Conn. 914, 811 A.2d 1294 (2002).

[7] Practice Book § 60-5 provides in relevant part: "The [reviewing] court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

[8] The state claims in its brief that induced error does not merit *Golding* review. In *State* v. *Whipper*, 258 Conn. 229, 780 A.2d 53 (2001), however, our Supreme Court explained that "[a]lthough error induced by an appellant

Although it is the general rule that a party who induces an error cannot be heard to complain about that error, unpreserved claims of constitutional magnitude, even when induced by the appellant, may be reviewed pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. *State* v. *Whipper*, 258 Conn. 229, 295 n.31, 780 A.2d 53 (2001). Thus, as a threshold matter, we must determine whether the defendant has raised claims that meet the *Golding* criteria.

In the present case, we conclude that the defendant's unpreserved claims, alleging that the court improperly charged on the issue of self-defense, are reviewable under the first two *Golding* criteria because the record is adequate for review and because the right to establish a defense is constitutional in nature. *Washington* v. *Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967).

We must now determine whether the defendant has satisfied the second two *Golding* criteria by demonstrating that there was constitutional error requiring a new trial. "We preface our analysis of the defendant's individual claims by once again stating, albeit briefly, the fundamental precepts that govern our review of these claims. An improper instruction on a defense, like an improper instruction on an element of an offense, is of constitutional dimension. . . . In either instance, [t]he

---

cannot be a ground for reversal and will not be reviewed . . . where the claim is of constitutional magnitude, it may be reviewed pursuant to *Golding*." (Citation omitted; internal quotation marks omitted.) Id., 295 n.31. "As we have stated before, [w]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them." (Internal quotation marks omitted.) *State* v. *Johnson*, 71 Conn. App. 272, 278, 801 A.2d 890, cert. denied, 261 Conn. 939, 808 A.2d 1133 (2002). Accordingly, we find no merit to the state's claim. The state also claims that induced error does not merit plain error review under Practice Book § 60-5. We, however, find nothing in the language of Practice Book § 60-5 that supports the state's claim; see footnote 7; and the state has not cited any authority for its claim. We therefore refuse to address that claim.

standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. . . . In determining whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Peters*, 40 Conn. App. 805, 809, 673 A.2d 1158, cert. denied, 237 Conn. 925, 677 A.2d 949 (1996). With those principles in mind, we turn to the defendant's individual jury instruction claims.

A

The defendant first argues that the court's charge on self-defense improperly limited the jury's self-defense inquiry to determining whether he was justified in using *deadly* force and thereby removed from the jury's consideration the option of determining whether he was justified in using *nondeadly* force. Specifically, he argues that in instructing the jury that this case involved deadly force, the court improperly resolved on its own an issue of fact for the jury, namely, whether the defendant had exercised deadly as opposed to nondeadly force, which played a significant role in the jury's rejection of his claim of self-defense and violated his right to a fair trial. We disagree.

The following additional facts are necessary to our disposition of the defendant's claim. The defendant submitted a request to charge on the issue of self-defense.

The defendant requested that the court's charge to the jury include the following: "A defendant claiming justification of self-defense is permitted to use deadly force in two broad circumstances. He may justifiably use deadly force only if he reasonably believed that the other person was either using, or about to use, deadly physical force, or inflicting, or about to inflict great bodily harm.

*"In this case, we are talking about the use of deadly physical force by the defendant.* It is therefore the last portion of that section of the statute on self-defense that is implicated in this case, and I'm going to read it to you." (Emphasis added.)

The court held a charging conference with counsel. Just prior to closing argument, the court asked counsel if there was anything either of them wanted to put on the record concerning their jury charge conference. Defense counsel responded that there was not. After closing arguments, the court stated to counsel: "You have the self-defense charge that we discussed, and I gather you both read it and agree that it comports with our—the content of our charge conference." Defense counsel responded: "The defense agrees, Your Honor." Thereafter, the court instructed on the applicable law. In its self-defense charge, the court included the exact language that the defendant had requested and now challenges on appeal. After the court excused the jury to begin its deliberations, the court asked counsel if there were any objections to the jury charge. Defense counsel indicated that he had no objection.

"Even though we review this claim under the third prong of *Golding,* we note that [w]hen the principal participant in the trial whose function it is to protect the rights of his client does not deem an issue harmful enough to press in the trial court, the appellate claim that the same issue clearly deprived the defendant of

a fundamental constitutional right and a fair trial . . . is seriously undercut." (Internal quotation marks omitted.) *State* v. *Grenier*, 55 Conn. App. 630, 650, 739 A.2d 751 (1999), rev'd on other grounds, 257 Conn. 797, 778 A.2d 159 (2001).

The defendant now argues, for the first time, that the court should have charged the jury on the issue of nondeadly force because he adduced sufficient evidence at trial to raise a question as to whether he had used nondeadly or deadly force. He advances his argument despite the fact that it was he who had requested that the court confine its self-defense charge to whether he was justified in using deadly force. In essence, what the defendant claims is that the court should have, sua sponte, charged the jury on the issue of nondeadly force. The defendant, however, offers us no authority for imposing such a duty on the court, and we decline to do so on the facts of this case.

It is true that "[i]f the defendant asserts a recognized legal defense and the evidence indicates the availability of that defense, such a charge is obligatory and the defendant is entitled, as a matter of law, to a theory of defense instruction." (Internal quotation marks omitted.) *State* v. *Bailey*, 209 Conn. 322, 340, 551 A.2d 1206 (1988). With regard to a claim of self-defense, that is so even where the defendant has not submitted a request to charge on a particular aspect of his defense and has not objected to its omission from the charge after the charge has been given. See id. (defendant entitled to charge on exception of § 53a-19 (b) (1) where evidence adduced at trial warranted such charge, despite fact that defendant did not request court to charge on exception or object to charge given at trial).

In the present case, we do not have a situation in which the defendant adduced sufficient evidence at trial to warrant a charge on a particular aspect of a defense,

did not file a request to charge and, therefore, relied on the court to fashion an appropriate charge as to that aspect of his defense. See id. Instead, we have a situation in which the defendant drafted and submitted his own request to charge, in which he essentially conceded that his theory of self-defense was limited to whether he was justified in using deadly force,[9] and now argues that he was, nonetheless, entitled to a charge on whether he was justified in using nondeadly force because he adduced evidence at trial that *would have* entitled him to such a charge. A defendant is allowed to make concessions; see *State* v. *Cooper*, 38 Conn. App. 661, 669, 664 A.2d 773 (even element of crime may be conceded by defendant), cert. denied, 235 Conn. 908, 665 A.2d 903 (1995), cert. denied, 517 U.S. 1214, 116 S. Ct. 1837, 134 L. Ed. 2d 940 (1996); and when he does so, he cannot be allowed later to complain that those concessions have rendered his trial unfair. See *State* v. *Whitford*, 260 Conn. 610, 632–33, 799 A.2d 1034 (2002) (" 'when viewed in the context of defense counsel's participation in fashioning the supplement[al] charge, [his] failure to except supports the . . . conclusion that the defendant accepted the supplement[al] charge as correct' "). "Due process of law requires that the proceedings shall be fair, but fairness is a relative, not an absolute concept. It is fairness with reference to particular conditions or particular results." (Internal quotation marks omitted.) *State* v. *Cooper*, supra, 670. Under the conditions present here, the defendant cannot complain that he has been deprived of his right to a fair trial. "To allow the defendant to seek reversal now that his trial strategy has failed would amount to allowing him to induce potentially harmful error, and

---

[9] We note that the state, too, apparently believed the defendant's self-defense theory was limited to whether he was justified in using deadly force because the state's request to charge included the same language that the defendant included in his request to charge and now challenges on appeal.

then ambush the state with that claim on appeal." (Internal quotation marks omitted.) Id. We refuse to do so.

Accordingly, we conclude that with respect to this claim, the defendant has failed to satisfy the third prong of *Golding* because he has failed to establish that a constitutional violation clearly exists and clearly deprived him of a fair trial. Similarly, we conclude, on the basis of our review of the record, that the claimed error did not affect the fairness and integrity of, nor the public confidence in, the judicial proceedings, and, therefore, did not constitute plain error. See *State* v. *Crespo*, 246 Conn. 665, 687, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999).

B

The defendant next claims that the court improperly instructed the jury as to how to evaluate his use of force. The following additional facts are necessary to our resolution of his claim. During its self-defense charge, the court instructed the jury that: "A defendant claiming justification of self-defense may only use reasonable force to defend himself. Reasonable force is the amount of force that would be used by an average person of ordinary intelligence acting under the same circumstances."

The defendant argues that this portion of the court's self-defense instruction was incorrect as a matter of law because it advised the jury to evaluate his use of force by a solely objective standard. He claims that it is well established that § 53a-19 incorporates a subjective-objective standard. See *State* v. *Corchado*, 188 Conn. 653, 663, 453 A.2d 427 (1982).[10] Consequently, he argues

_____

[10] "In *Corchado* [our Supreme Court] noted that [General Statutes §] 53a-19 focuses on the person, here the defendant . . . claiming self-defense. It focuses on what *he* reasonably believes under the circumstances and presents a question of fact . . . . This statutory emphasis upon the defendant further demonstrates the function of the jury in their evaluation of the self-defense claim. . . . We also note in passing that there is nothing in that

that the jury was misled as to how it should evaluate his subjective belief as to the amount of force necessary under the circumstances. That claim is without merit.

We agree with the defendant that the challenged portion of the instruction previously quoted seems to employ a purely objective standard and that use of that particular language has been discouraged by our Supreme Court. See *State* v. *Anderson*, 227 Conn. 518, 533, 631 A.2d 1149 (1993) (nothing in subjective-objective test refers to " 'person of ordinary intelligence' "). When viewed in the context of the charge as a whole, however, we are satisfied that there is no reasonable possibility that this one, isolated statement misled the jury to arrive at an improper verdict. See *State* v. *Harrison*, 32 Conn. App. 687, 699, 631 A.2d 324, cert. denied, 227 Conn. 932, 632 A.2d 708 (1993).

Although the trial court made such a statement, that does not end our inquiry. "It is well settled that a jury's evaluation of a claim of self-defense has both subjective and objective elements. . . . In evaluating a claim of self-defense, a trier of fact must first examine the danger that a defendant claims he faced. It is clear that here [t]he statute focuses on the [defendant] claiming self-defense. It focuses on what *he* reasonably believes under the circumstances . . . . The jury must view the situation from the perspective of the defendant. . . . [T]he defendant's belief [however] ultimately must be found to be reasonable." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Peters*, supra, 40 Conn. App. 816.

test that refers to a 'person of ordinary intelligence.' We discourage the use of instructional language that strays from the *Corchado* subjective-objective standard in any significant manner." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Anderson*, 227 Conn. 518, 533, 631 A.2d 1149 (1993); see also *State* v. *DeJesus*, 194 Conn. 376, 389 n.13, 481 A.2d 1277 (1984).

On the basis of our review of the charge as a whole, we conclude that the court in the present case clearly instructed the jury that in analyzing the defendant's self-defense claim, it was required to apply a subjective-objective standard. Here, prior to making the statement that the defendant now challenges on appeal, the court charged the jury that a "person is justified in the use of reasonable force upon another when he reasonably believes that such force is necessary to protect himself from the use of or impending use of force by another." A little later in the charge, the court explained that "the statute focuses on the person claiming self-defense. *It focuses on what he reasonably believed under the circumstances and presents a question of fact for the jury.* In other words, *what is important is what the defendant reasonably believed under the circumstances in this case.*

"The test for the degree of force in self-defense is a subjective-objective test, meaning it has some subjective aspects and some objective aspects. Self-defense thus requires the jury to measure the justifiability of the defendant's actions from a subjective perspective, that is, what the defendant reasonably believed under the circumstances presented in this case and on the basis of what the defendant perceived the circumstances to be. Now, the danger or apparent danger claimed by the defendant is to be determined from his standpoint at the time of the attack and under all of the circumstances." (Emphasis added.)

Immediately following the statement that the defendant challenges on appeal, the court instructed the jury as follows: "Now, § 53a-19 (a) requires, however, that the defendant's belief must have been reasonable and not irrational or unreasonable under the circumstances as he was presented with them; that is, would a reasonable person in the defendant's circumstances have reached that belief, that is the objective aspect of the

test. *It is both a question of what his belief was and whether it was reasonable."* (Emphasis added.)

Although the challenged instruction, when viewed in isolation, could be construed as dictating a purely objective standard, when viewed in the context of the charge as a whole, we conclude that the court adequately instructed the jury as to both the subjective and objective aspects of the test involved in a self-defense analysis. Accordingly, the defendant's claim to the contrary is without merit and, therefore, the defendant cannot meet the third prong of *Golding*. We also conclude that his claim does not merit plain error review.

## C

The defendant also claims that the court improperly instructed the jury that it must first determine whether the victim was about to use force or was inflicting injury against the defendant before it determined whether the defendant reasonably believed that the victim was doing so. The challenged portion of the court's self-defense instruction states as follows: "In this case, *if you find the victim was about to use deadly physical force or inflict great bodily harm upon the defendant*, and if you further find that the defendant had a reasonable belief that the victim was about to use deadly physical force or inflict great bodily harm upon the defendant, *then* the defendant would be justified in using deadly physical force upon the victim.

"On the other hand, *if you find proven beyond a reasonable doubt that the victim was not using or about to use deadly physical force or inflict great bodily harm upon the defendant*, and if you further find proven beyond a reasonable doubt that the defendant had no reasonable belief that the victim was using or about to use deadly physical force or about to inflict great bodily harm upon the defendant, *then* the defendant would not be justified in using deadly physical force upon the

victim. You would, under those circumstances, reject the defense of self-defense." (Emphasis added.) We note that this portion of the charge essentially mirrors the defendant's request to charge.

The defendant argues that the challenged portion of the charge misled the jury because it imposed a requirement that the jury first make a determination of whether the victim was using or about to use physical force or inflicting or about to inflict great bodily harm. He further argues that that portion of the instruction diminished the subjective-objective inquiry required by § 53a-19.

We agree with the defendant that the previously quoted portion of the court's self-defense instruction, when viewed in isolation, was improper.[11] See General Statutes § 53a-19. Whether the victim was, *in fact*, using or about to use physical force or inflicting or about to inflict great bodily harm on the defendant is not a factor necessary to the jury's analysis of a self-defense claim because the focus of the statute is clearly on what the defendant reasonably believed. See General Statutes § 53a-19. We disagree, however, that, when viewed in the context of the jury instruction as a whole, it was reasonably possible that the jury was misled in reaching its verdict or that the challenged portion of the instruction diminished the subjective-objective inquiry required by § 53a-19.

Shortly before giving the challenged portion of the charge quoted above, the court instructed the jury:

[11] We are aware that another defendant's petition for certification for appeal to our Supreme Court from the decision in *State* v. *Clark*, 68 Conn. App. 19, 789 A.2d 549, cert. granted, 260 Conn. 906, 795 A.2d 546 (2002), which involved a similar jury instruction, has been granted, limited to the following issue: "Did the Appellate Court properly conclude that the defendant had failed to establish a constitutional violation in the trial court's instructions on the law of self-defense?" *State* v. *Clark*, 260 Conn. 906, 906–907, 795 A.2d 546 (2002).

"Now, the danger or apparent danger claimed by the defendant is to be determined from his standpoint at the time of the attack and under all of the circumstances. *The act leading to the defendant's claim of self-defense need not be an actual threat or assault; the test is not what the other person actually intended, but what the aggressor's act caused the defendant to reasonably believe was his intent. In other words, the danger need not have been actual if the defendant reasonably believed that the danger was actual, real, imminent or unavoidable.*

"In judging the danger to himself, the defendant was not required to act with infallible judgment. Ordinarily, one exercising the right of self-defense is required to act instantly and without the time to deliberate or investigate. *Under such circumstances, it is often possible to mistake an actual threat when none, in fact, existed. The law does not require the same coolness in judgment in estimating his danger.* Note, however, that the defendant's belief of danger must be honest and sincere. Apparent danger with the knowledge that no real danger exists is not an excuse for using force." (Emphasis added.)

We also disagree that the challenged portion of the charge diminished the subjective-objective inquiry required by § 53a-19. The court provided the jury with extensive instructions on the subjective and objective portions of a self-defense claim and, in the course of those instructions, it made clear to the jury that it should focus on what the defendant reasonably believed. See part I A.

We therefore conclude that when viewed in the context of the charge as a whole, it is not reasonably possible that the jury was misled by that portion of the court's charge. Consequently, the defendant's claim fails under the third prong of *Golding* because he has failed to

establish that a constitutional violation clearly exists. Likewise, we conclude that the claimed error does not warrant plain error review. See Practice Book § 60-5.

## II

Finally, the defendant claims that the state's evidence was insufficient to disprove, beyond a reasonable doubt, that he acted in self-defense and, therefore, the court should have granted his motion for a judgment of acquittal. He argues that in considering all of the evidence adduced at trial, the only reasonable and logical determination that the jury could have made was that he reasonably believed that the victim was using or about to use deadly physical force or about to inflict great bodily harm and that the defendant merely took reasonable action to defend himself. Accordingly, he argues that his conviction must be overturned and his case remanded for a judgment of acquittal to enter. We disagree.

At trial, the defendant claimed that he was acting in self-defense when he stabbed Martinez. "Self-defense is raised by way of justification, and when such defense is asserted the state shall have the burden of disproving such defense beyond a reasonable doubt. . . .

"A person is justified in using deadly physical force, under the self-defense statute, § 53a-19 (a), only when he reasonably believes such force to be necessary because he reasonably believes that [another] person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm. Even then, under § 53a-19 (b) and (c), a person is not justified in using deadly physical force on another person if (1) he knows that he can avoid the necessity of using such force with complete safety by retreating, (2) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person [or] (3) he is the initial aggressor . . . . Section 53a-

19 presents a question of fact about what the defendant himself reasonably believed about his exposure to jeopardy under the circumstances." (Internal quotation marks omitted.) *State* v. *Ash*, 33 Conn. App. 782, 789, 638 A.2d 633, rev'd on other grounds, 231 Conn. 484, 651 A.2d 247 (1994); see also *State* v. *Garrison*, 203 Conn. 466, 470, 525 A.2d 498 (1987).

In the present case, the defendant's challenge to the sufficiency of the evidence focuses primarily on the contradictory evidence that was presented at trial and his claim that the jury reasonably could have concluded that he reasonably believed that he was justified in using deadly force to defend himself against Martinez, who he emphasizes was some fifty pounds heavier. He asserts, mostly on the basis of his own testimony, that the only reasonable conclusion the jury could have reached was that he acted in self-defense. Such an argument, however, relates to witness credibility, not sufficiency of the evidence. See *Aksomitas* v. *Aksomitas*, 205 Conn. 93, 101, 529 A.2d 1314 (1987), and cases cited therein; see also *State* v. *Cavallo*, 200 Conn. 664, 672–73, 513 A.2d 646 (1986). "The jury is the final arbiter of credibility . . . and it was free to believe the testimony given by [Martinez] and disbelieve the defendant's testimony." (Citation omitted.) *Aksomitas* v. *Aksomitas*, supra, 101.

"On appeal, we do not attempt to weigh the credibility of evidence offered at trial, nor do we purport to substitute our judgment for that of the jury. Instead, our review consists of a two-step process in which we construe the evidence presented at trial in a light most favorable to sustaining the verdict . . . and then determine whether the jury could reasonably have found, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt."

(Citations omitted; internal quotation marks omitted.) *State* v. *Cavallo*, supra, 200 Conn. 673.

Despite the defendant's claim to the contrary, our review of the record reveals that the jury was free to disbelieve his claim of self-defense and to conclude, beyond a reasonable doubt, that he did not believe that Martinez was inflicting or about to inflict deadly force or great bodily harm or that the defendant reasonably believed that the degree of force that he used was necessary to defend himself. "[W]e give deference not to the hypothesis of innocence posed by the defendant, but to the evidence and the reasonably inferences drawn therefrom that support the jury's determination of guilt." (Internal quotation marks omitted.) *State* v. *Knight*, 50 Conn. App. 109, 113, 717 A.2d 274 (1998).

At the time of the altercation, Martinez was unarmed. The defendant, however, was armed with a knife. The defendant testified that he had used a small knife with a two inch blade. The state, however, offered evidence that Martinez's wound was consistent with a knife that had a blade exceeding six inches. The state also offered evidence that Martinez's wound was six to eight inches deep, four inches wide, and that the wound had exposed his intestines. Furthermore, the defendant testified at trial that he used the knife only because he was being severely beaten by Martinez. At the time of his arrest, however, he denied stabbing Martinez and claimed, instead, that the two had merely had a fistfight. The defendant also testified that initially, he washed and hid the two inch knife that he now claims he used to stab Martinez. It was not until some two months after his arrest that he turned that knife over to an investigator from his attorney's office. Also, photographs in evidence of the defendant's face and chest, taken just hours after the altercation, did not indicate any cuts or bruises or that he had sustained any serious injury from Martinez's punches. The photographs indicated only

that the defendant had a small lump behind one ear and some minor scrapes on his chest and arms.

In addition, Martinez and Gaudioso testified that Martinez landed very few punches and that the fight had lasted only a couple of minutes when the defendant pulled out his knife and stabbed Martinez. Despite the defendant's claim that the fight was dominated by Martinez, another witness, Roger Robinson, a bouncer at Humphrey's, testified that from what he observed, it looked like the fight between the two men was an even match. The defendant also had warned Martinez before the fight began: "You don't want to do this, you will regret it for the rest of your life." The jury was entitled to infer from that statement that the defendant intended to use his knife before the physical altercation even began and that use of the knife was not due to his belief that he was, or about to become, the target of deadly force or great bodily harm.

Accordingly, we conclude that the defendant's claim that the state failed to produce sufficient evidence to disprove his claim of self-defense is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.