## STATE OF CONNECTICUT *v.* STEVIE CLARK
### (SC 16713)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued February 18—officially released July 22, 2003

*Karen T. Staib*, special public defender, with whom was *Sheila A. Huddleston*, special public defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *John F. Fahey*, assistant state's attorney, for the appellee (state).

*Opinion*

BORDEN, J. The defendant appeals, following our grant of certification,[1] from the judgment of the Appellate Court affirming the trial court's judgment of conviction, rendered after a jury trial, of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a.[2] The defendant claims that the Appellate Court improperly concluded that he had failed to establish a constitutional violation in the trial court's instructions on the law of self-defense. We affirm the judgment of the Appellate Court, albeit on somewhat different reasoning than that employed by the Appellate Court.

The defendant, Stevie Clark, was charged with murder in violation of General Statutes § 53a-54a in connec-

---

[1] We granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the defendant had failed to establish a constitutional violation in the trial court's instructions on the law of self-defense?" *State* v. *Clark*, 260 Conn. 906, 907, 795 A.2d 546 (2002).

[2] General Statutes § 53a-55a (a) provides in relevant part: "A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. . . ."

tion with the shooting death of the victim, John Bazemore. At trial, the defendant presented a defense of self-defense.[3] The jury found the defendant not guilty of murder, but guilty of the lesser included offense of manslaughter in the first degree with a firearm in violation of § 53a-55a. The trial court rendered judgment of conviction on the verdict. The defendant appealed to the Appellate Court, contending that the trial court improperly had instructed the jury on the elements of self-defense.[4] The Appellate Court affirmed the judgment of the trial court, concluding that it was not reasonably possible that the jury had been misled by the trial court's charge. *State* v. *Clark*, 68 Conn. App. 19, 30, 789 A.2d 549 (2002). This certified appeal followed.

The jury reasonably could have found the following facts as set forth in the opinion of the Appellate Court. "On June 25, 1996, New Britain police officers were dispatched to 66 Richard Street to investigate a shooting. Upon arriving at the scene, the officers found the victim . . . on the ground, bleeding from his head and chest.[5] A canvass of the area led the police to suspect that the defendant was the perpetrator. On the basis of the information that they obtained, the police went to the defendant's residence to question him, but he was not present. A police canine traced the defendant's

---

[3] General Statutes § 53a-19 (a) provides in relevant part: "[A] person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm."

[4] On appeal, the defendant also claimed that the trial court improperly had excluded evidence regarding his knowledge of his father's death. *State* v. *Clark*, 68 Conn. App. 19, 23, 789 A.2d 549 (2002). The Appellate Court rejected this claim; id., 25; and it is not before us in this certified appeal.

[5] "The victim subsequently died after being transported to New Britain General Hospital." *State* v. *Clark*, supra, 68 Conn. App. 21 n.2.

scent to a nearby tree, where the police found the defendant. While descending from the tree, the defendant reportedly stated, 'I did it. I shot John.' Subsequently, the police arrested the defendant and informed him of his *Miranda*[6] rights. The defendant waived his *Miranda* rights and cooperated with the police for approximately forty-five minutes until his counsel informed the officers that the conversation was to cease until he arrived.

"At trial, the defendant and eyewitnesses gave the following account of the events that led to the shooting. Shortly after 10 p.m., on June 25, 1996, the defendant left his apartment to [walk] to the area of 66 Richard Street, where his girlfriend lived. En route, the victim, who appeared intoxicated, stopped the defendant. The victim asked the defendant if he had any crack cocaine in his possession because he knew of an individual who wanted to purchase it. The defendant handed three packages of crack cocaine to the victim, each with a value of $20. After a short period of time, the victim returned without the crack cocaine and gave the defendant $25, claiming that he sold the drugs at a reduced rate because the buyer 'was a good guy.' Believing that the victim was still in possession of the drugs, the defendant became angry. Because of the defendant's prior experiences with the victim, however, the defendant did not pursue the issue at that time.[7]

"Shortly after the defendant arrived at 66 Richard Street, the victim appeared. He angrily accused the defendant of causing him trouble because of the earlier drug transaction. An altercation between the defendant and the victim ensued in which the victim pushed the

---

[6] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[7] "The defendant testified that he had a history of physical and verbal encounters with the victim, including an occasion when the victim lifted the defendant above his head and threatened to slam him to the ground." *State* v. *Clark*, supra, 68 Conn. App. 22 n.4.

defendant several times. The defendant then left the scene for a period of five to ten minutes. When he returned, the victim became angry again, yelled at the defendant and pushed him. The defendant then 'swore on his father's grave' that if the victim laid his hands on him again, he would shoot him. The defendant pulled a .380 caliber semiautomatic pistol from his waistband when the pushing and yelling continued. Upon seeing the weapon, the victim stated to the defendant that 'he better be prepared to use it or else he would take it away from him, along with everything else he had.' The defendant returned the pistol to his waistband, but the yelling persisted. After being pushed again, the defendant removed the gun from his waistband and fired three bullets at the victim, hitting him in the chest and chin." Id., 21–22.

The following procedural history, as set forth by the Appellate Court, is relevant to the defendant's claim on appeal that the trial court misled the jury when the court instructed the jury on the elements of self-defense. "During the initial charge to the jury, the [trial] court stated: 'If you find proven beyond a reasonable doubt that the victim . . . was not using or about to use deadly physical force as I have defined that term for you or not inflicting or about to inflict bodily harm upon the defendant . . . and if you further find proven beyond a reasonable doubt that the defendant had no reasonable belief that the victim . . . was using or about to use deadly physical force or inflicting or about to inflict great bodily harm upon the defendant, then the defendant would not be justified in using deadly physical force upon the victim.'

"In response to the defendant's objection to the jury charge, the [trial] court reinstructed the jury on the issue of self-defense. After [repeating] the contested language [to] the jury, the court stated: 'I wish to further clarify that by pointing out to you and instructing you

that the issue, the question in such regard is not whether the victim . . . intended to use deadly physical force or intended to inflict great bodily harm, but rather, the issue is whether the defendant . . . under the circumstances, reasonably believed that [the victim] intended to use deadly force or inflict great bodily harm.'

"While deliberating, the jury asked the court to reread its instructions on the issue of self-defense. In restating its instructions, the [trial] court read both the charge that was initially contested and the curative charge. Additionally, the court stated: 'The self-defense statute, ladies and gentlemen, focuses on the person claiming self-defense; that is, the defendant. It focuses on what he reasonably believed under the circumstances and presents a question of fact for the jury. In other words, what is important is what the defendant reasonably believed under the circumstances. The test for the degree of force in self-defense is a subjective-objective test. It has some subjective aspects and some objective aspects.' It is the defendant's contention that the jury was misled when the court repeated the objectionable portion of the charge." Id., 27–28.

The Appellate Court concluded that it was "not reasonably possible that the jurors were misled when the [trial] court instructed them on the subjective-objective test of self-defense." Id., 30. The Appellate Court reasoned that the text of General Statutes § 53a-19 (a) had been read twice to the jury and, in addition, that the trial court sufficiently had explained and emphasized that the jury must focus on two aspects of the self-defense statute—one subjective and one objective. Id. Accordingly, the Appellate Court held that the defendant had failed to establish a constitutional violation in the trial court's instructions on the law of self-defense. Id.

On appeal to this court, the defendant contends that the Appellate Court's judgment was improper because

the trial court improperly had instructed the jury on his claim of self-defense by misstating the subjective-objective elements of the self-defense charge. More specifically, the defendant argues that the charge suggested to the jury that the defendant's subjective perception of danger would not have been reasonable unless the victim had in fact been using or was about to use deadly force or inflict serious bodily injury. We disagree.

We first note the standard of review that governs this case. The defendant concedes that he did not properly preserve his claim at trial, and that the Appellate Court appropriately evaluated it under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). *State* v. *Clark*, supra, 68 Conn. App. 27 n.8. Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 239–40. We conclude that, although the trial court's instructions improperly injected a particular irrelevant factual element into the law of self-defense, no constitutional violation existed because the portion of the instruction that was improper was detrimental to the state, and not to the defendant.

"An improper instruction on a defense, like an improper instruction on an element of an offense, is of constitutional dimension. . . . [T]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. . . . In determining whether the jury was misled, [i]t is well established that [a] charge to the

jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Amado*, 254 Conn. 184, 194, 756 A.2d 274 (2000); *State* v. *Prioleau*, 235 Conn. 274, 284, 664 A.2d 743 (1995).

With those principles in mind, we turn to a brief review of the law of self-defense. Under our Penal Code, self-defense, as defined in § 53a-19 (a); see footnote 3 of this opinion; is a defense, rather than an affirmative defense. See General Statutes § 53a-16.[8] Whereas an *affirmative defense* requires the defendant to establish his claim by a preponderance of the evidence, a properly raised *defense* places the burden on the state to disprove the defendant's claim beyond a reasonable doubt. See General Statutes § 53a-12.[9] Consequently, a defendant has no burden of persuasion for a claim of self-defense; he has only a burden of production. That is, he merely is required to introduce sufficient evidence to warrant presenting his claim of self-defense to the jury. *State* v. *Lewis*, 245 Conn. 779, 810, 717 A.2d 1140 (1998) ("[A] defendant bears the initial burden of producing sufficient evidence to inject self-defense into the case. . . . This burden is slight, however, and may be satisfied if there is any foundation in the evidence [for the defen-

---

[8] General Statutes § 53a-16 provides: "In any prosecution for an offense, justification, as defined in sections 53a-17 to 53a-23, inclusive, shall be a defense."

[9] General Statutes § 53a-12 provides: "(a) When a defense other than an affirmative defense, is raised at a trial, the state shall have the burden of disproving such defense beyond a reasonable doubt.

"(b) When a defense declared to be an affirmative defense is raised at a trial, the defendant shall have the burden of establishing such defense by a preponderance of the evidence."

dant's claim], no matter how weak or incredible . . . ." [Citation omitted; internal quotation marks omitted.]). Once the defendant has done so, it becomes the state's burden to disprove the defense beyond a reasonable doubt. General Statutes § 53a-12 (a); *State* v. *Carter*, 232 Conn. 537, 545, 656 A.2d 657 (1995) ("[o]nly when the issue [of self-defense] has been sufficiently raised does the state have the burden of disproving such defense beyond a reasonable doubt" [internal quotation marks omitted]). Accordingly, "[u]pon a valid claim of self-defense, a defendant is entitled to proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified." (Internal quotation marks omitted.) *State* v. *Lemoine*, 256 Conn. 193, 199, 770 A.2d 491 (2001). As these principles indicate, therefore, only the state has a burden of persuasion regarding a self-defense claim: it must disprove the claim beyond a reasonable doubt.

It is well settled that under § 53a-19 (a), "a person may justifiably use deadly physical force in self-defense only if he reasonably believes both that (1) his attacker is using or about to use deadly physical force against him, or is inflicting or about to inflict great bodily harm, and (2) that deadly physical force is necessary to repel such attack. . . . We repeatedly have indicated that the test a jury must apply in analyzing the second requirement, i.e., that the defendant reasonably believed that deadly force, as opposed to some lesser degree of force, was necessary to repel the victim's alleged attack, is a subjective-objective one. The jury must view the situation from the perspective of the defendant. Section 53a-19 (a) requires, however, that the defendant's belief ultimately must be found to be reasonable." (Citations omitted; internal quotation

marks omitted.) *State* v. *Prioleau,* supra, 235 Conn. 285–86.

"The subjective-objective inquiry into the defendant's belief regarding the necessary degree of force requires that the jury make two separate affirmative determinations in order for the defendant's claim of self-defense to succeed. First, the jury must determine whether, on the basis of all of the evidence presented, the defendant *in fact had believed* that he had needed to use deadly physical force, as opposed to some lesser degree of force, in order to repel the victim's alleged attack. . . . If the jury determines that the defendant had not believed that he had needed to employ deadly physical force to repel the victim's attack, the jury's inquiry ends, and the defendant's self-defense claim must fail. If, however, the jury determines that the defendant in fact had believed that the use of deadly force was necessary, the jury must make a further determination as to whether *that belief was reasonable,* from the perspective of a reasonable person in the defendant's circumstances. . . . Thus, if a jury determines that the defendant's honest belief that he had needed to use deadly force, instead of some lesser degree of force, was not a reasonable belief, the defendant is not entitled to the protection of § 53a-19." (Citations omitted; emphasis altered.) Id., 286–87.

We agree with the defendant that the trial court's instruction improperly stated the elements that must be shown under § 53a-19 (a). The subjective-objective test under § 53a-19 (a) applies only to the defendant: subjectively, the defendant must believe that the use of deadly force is necessary, and objectively, that belief must be reasonable. The trial court's instruction, therefore, was improper because it injected an element into the self-defense calculus that need not be considered, namely, whether the *victim* was, in fact, using or about to use deadly force. The trial court stated the improper

portion of the charge, however, only when it was discussing the *state's* burden of persuasion *for disproving* self-defense.[10] In discussing what perception by the defendant would permit a finding of self-defense, the trial court did not refer to the *victim's* actual use of force. Indeed, the court several times emphasized that the appropriate focus is on the *defendant's* reasonable belief. The contested portion of the charge, therefore, merely added an additional element that the state was not required to prove, namely, whether the victim was actually using or about to use deadly force; it did nothing to dilute the state's burden of proving, beyond a reasonable doubt, that the defendant's use of deadly force was not justified. Thus, because this instructional impropriety increased the state's burden to establish the charged crime, any incorrect impression in the mind of the jury could have served only to benefit the defendant.

The contested language in the trial court's instruction was as follows: "*If you find proven beyond a reasonable doubt that the victim . . . was not using or about to use deadly physical force* as I have defined that term for you *or not inflicting or about to inflict bodily harm upon the defendant . . . and* if you further find proven beyond a reasonable doubt that the defendant had no reasonable belief that the victim . . . was using or about to use deadly physical force or inflicting or about to inflict great bodily harm upon the defendant, then the defendant would not be justified in using deadly physical force upon the victim." (Emphasis added; inter-

---

[10] The trial court properly instructed the jury on the state's burden of disproving the defendant's claim of self-defense beyond a reasonable doubt as required by § 53a-12 (a). The trial court, first in its initial instruction and again during its supplemental instruction, stated: "[T]he raising of this defense places no burden whatsoever on the defendant, rather, the entire burden rests on the state to disprove the defense of self-defense beyond a reasonable doubt. That is, once self-defense has been raised in a case, the state must disprove the defense beyond a reasonable doubt."

nal quotation marks omitted.) *State* v. *Clark*, supra, 68 Conn. App. 27–28. In sum, the trial court stated that the defendant would not be justified in using deadly force if the *state* proved beyond a reasonable doubt that: (1) the victim was not using or about to use deadly physical force; *and* (2) the defendant had no reasonable belief that the victim was using or about to use deadly physical force. According to a plain reading of this instruction, therefore, the state had to prove *both* elements in order for the jury to reject the defendant's claim of self-defense.

"Unless there is evidence to the contrary, the jury is presumed to follow the court's instructions." *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, 255 Conn. 20, 37, 761 A.2d 1268 (2000); see also *State* v. *Reynolds*, 264 Conn. 1, 131, 836 A.2d 224 (2003) ("[i]n the absence of a showing that the jury failed or declined to follow the court's instructions, we presume that it heeded them"). Although the defendant is correct when he points out that the *victim's* conduct or intent is irrelevant under § 53a-19 (a), the trial court's instruction merely placed an additional burden on the state. Moreover, the trial court expressly stated to the jury that "the raising of [self-defense] places no burden whatsoever on the defendant," and that "the entire burden rests on the state to disprove the defense of self-defense beyond a reasonable doubt." See footnote 10 of this opinion. The trial court's instructions, therefore, could have served only to benefit the defendant by increasing the *state's* burden of disproving self-defense. Accordingly, because the trial court's instruction was not harmful to the defendant, his claim of constitutional error must fail under the third prong of *Golding*.

The defendant further claims that the trial court's supplemental instruction misled the jury because the court restated the improper portion of its previous instruction before reading its curative charge. Relying

on language from *State* v. *Ash*, 231 Conn. 484, 496, 651 A.2d 247 (1994), the defendant argues that the court's curative statement could not have " 'sufficiently reoriented' " the jury to the proper subjective element under § 53a-19 (a). According to the defendant, in its supplemental charge, "the trial court prefaced its misstatement by telling the jury to examine both: (a) what was the defendant's belief; and (b) whether it objectively was a reasonable belief. This preface suggested that the two explanations to follow would correspond to these two prongs of the subjective-objective test. However, the court then told the jury to evaluate (a) whether [the victim] was *in fact* about to use deadly force or cause serious bodily injury, and (b) what the defendant reasonably believed." (Emphasis in original.) The defendant contends that the improper portion of the trial court's instruction first confused the jury into thinking that the subjective prong of § 53a-19 (a) focuses on the *victim's* intent, and second, that the instruction's curative final sentence, stating that the jury should focus on the defendant and not on the victim, "wholly eliminated the subjective prong of the self-defense test." We are not persuaded.

To understand the defendant's claim, it is helpful to recount the trial court's supplemental instruction given after the jury had requested to be recharged on the law of self-defense. The court's supplemental charge stated: "The self-defense statute, ladies and gentlemen, focuses on the person claiming self-defense; that is, the defendant. It focuses on what he reasonably believed under the circumstances and presents a question of fact for the jury. In other words, what is important is what the defendant reasonably believed under the circumstances. The test for the degree of force in self-defense is a subjective-objective test. It has some subjective aspects and some objective aspects. . . . As stated, then, it is both a question of what, on the credible

evidence, the defendant's belief was and whether it was objectively a reasonable belief. *If you find, proven beyond a reasonable doubt that the victim . . . was not using or about to use deadly physical force, as I have defined that term for you, or not inflicting or about to inflict great bodily harm upon the defendant . . . and if you further find proven beyond a reasonable doubt that the defendant had no reasonable belief that the victim . . . was using or about to use deadly physical force or inflicting or about to inflict great bodily harm upon the defendant, then the defendant would not be justified in using deadly physical force upon the victim.* Now, in this regard, I wish to point out to you the question is not whether the victim . . . intended to use deadly physical force or inflict great bodily harm but, rather, whether the defendant . . . under the circumstances, reasonably believed that [the victim] intended to use physical force or inflict great bodily harm." (Emphasis added.)

The defendant's contention fails because, as discussed previously, the improper portion of the charge, even though repeated, merely added an additional element that the state was not required to prove. If anything, its inclusion in the supplemental charge, therefore, was to the state's, and not to the defendant's, detriment. Furthermore, the final sentence of the supplemental instruction did not eliminate the subjective portion of § 53a-19 (a); rather, it expressly stated that the jury should focus on what the defendant "reasonably believed . . . ." The trial court's phrasing, when focusing on the defendant's state of mind, sufficiently incorporated both the subjective and objective elements required by § 53a-19 (a). Thus, the defendant's reliance on *State* v. *Ash*, supra, 231 Conn. 496, is misplaced because, even if the trial court's curative charge could not have " 'sufficiently reoriented' " the jury to the correct legal standard, any remaining instructional

impropriety could have served only to benefit the defendant.

Finally, the defendant suggests that we adopt a bright line rule that, in the limited circumstance in which an initial improper instruction is corrected and a recharge is later requested by the jury, the trial court must provide only the proper instruction in its recharge. The defendant contends that this bright line rule would avoid jury confusion because it would provide a means of ensuring that a recharge on a previously corrected instruction will remove whatever mistaken impression remained in the mind of the jury. We decline to adopt such a rule because the trial court is best suited to determine, on a case-by-case basis, the proper means for reorienting the jury to the proper legal standard. The rule that the defendant proposes would unduly restrict the trial court's discretion in situations that will inevitably vary in degree and circumstance, and would be as likely to create, as to limit, jury confusion.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.