# STATE OF CONNECTICUT *v.* NATHAN J.*
## (SC 17903)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and DiPentima, Js.

* In accordance with General Statutes § 54-86e and our policy of protecting the privacy interests of victims of the crime of risk of injury to a child, we decline to identify the victims or others through whom the victims' identities may be ascertained.

Argued September 11—officially released December 1, 2009

*Toni M. Smith-Rosario*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, former state's attorney, and *Judy Stevens*, senior assistant state's attorney, for the appellant (state).

*Richard E. Condon, Jr.*, assistant public defender, for the appellee (defendant).

*Opinion*

KATZ, J. The state appeals, following our grant of certification, from the judgment of the Appellate Court reversing the judgment of conviction of the defendant, Nathan J., rendered after a jury trial, of the crime of risk of injury to a child in violation of General Statutes § 53-21 (a) (1).[1] *State* v. *Nathan J.*, 99 Conn. App. 713,

---

[1] General Statutes § 53-21 provides in relevant part: "(a) Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony for a violation of subdivision (1) or (3) of this subsection . . . ."

We note that changes were made to § 53-21 regarding violations of subdivision (2) of subsection (a). See Public Acts 2007, No. 07-143, § 4. These

915 A.2d 907 (2007). We granted certification to appeal limited to two issues: (1) whether the Appellate Court properly concluded, as a matter of law, that the justification defense of reasonable physical force by a parent for the purpose of maintaining discipline (parental justification defense) provided by General Statutes § 53a-18 (1)[2] applies to the charge of risk of injury to a child under § 53-21 (a) (1); and (2) whether, under the facts of this case, the Appellate Court properly concluded that the defendant was entitled to an instruction on the defense. *State* v. *Nathan J.*, 282 Conn. 913, 924 A.2d 139 (2007). We conclude that the Appellate Court properly concluded both that the parental justification defense applies to a charge of risk of injury to a child, and that the defendant in this case was entitled to an instruction on the defense. We therefore affirm the Appellate Court's judgment.

The jury reasonably could have found the following facts. At the time of the incident in question, the defendant shared joint custody of the victim, his eleven year old son, with the victim's mother. Under the custody agreement, the victim alternated living with each parent for one week at a time. The principal of the victim's school was aware of the custodial arrangement, and would contact whichever parent had physical custody of the victim as needed. In late December, 2003, the

changes are not relevant to the present appeal and, accordingly, for purposes of convenience, references herein to § 53-21 (a) (1) are to the current revision.

[2] General Statutes § 53a-18 provides in relevant part: "The use of physical force upon another person which would otherwise constitute an offense is justifiable and not criminal under any of the following circumstances:

"(1) A parent, guardian or other person entrusted with the care and supervision of a minor or an incompetent person, except a person entrusted with the care and supervision of a minor for school purposes as described in subdivision (6) of this section, may use reasonable physical force upon such minor or incompetent person when and to the extent that he reasonably believes such to be necessary to maintain discipline or to promote the welfare of such minor or incompetent person. . . ."

principal informed the defendant that the victim had pushed a teacher at school. The defendant went to the school and met with the principal, the teacher and the victim.

When the victim returned home, the defendant confronted him about the incident with the teacher. The defendant demanded that the victim tell him why he had pushed the teacher. The victim explained why he had done so, and the defendant grabbed the victim by the shirt. The defendant then struck the victim's face with his hand. The victim fell to the floor, and the defendant kicked him.

The next morning the victim attended school as usual, but displayed a bruise under his right eye. Later in the morning, the victim's mother arrived at the school office with food for a school holiday party and asked that the victim be paged so that he could bring the food to his classroom. When the victim arrived in the office, his mother noticed his black eye and asked him what had happened. The victim told her that the defendant had inflicted the injury. At the mother's request, the principal of the school and the school nurse both looked at the victim's face and observed the bruise beneath his right eye. The principal asked the victim about his injury, and the victim informed her and the school nurse that the defendant had hit him.

The principal subsequently arranged for the victim to be interviewed by a social worker from the department of children and families (department) and by a police officer. The victim told the social worker that the defendant had hit him in the face. The victim told the police officer that the defendant had punched him in the cheek and kicked him in the abdomen after he had fallen to the ground. The officer then went to the defendant's home, where the defendant told him that he had had an argument with the victim and that the

victim had fallen onto the ring on the defendant's hand and then tripped onto the floor.

The record establishes the following procedural history. The defendant was charged by substitute long form information with assault in the third degree in violation of General Statutes § 53a-61 (a) (1),[3] disorderly conduct in violation of General Statutes § 53a-182 (a) (2),[4] and risk of injury to a child in violation of § 53-21 (a) (1). At trial, the state's theory of prosecution was that the defendant intentionally had struck the victim because he was angry with him about the incident involving his teacher. The state presented its case through the testimony of seven witnesses, including the principal, the school nurse, the department social worker, and the police officer who had been involved in investigating the case. The state also presented the testimony of the victim's mother, the victim's older brother, and the victim himself. The victim testified that the injury had occurred when the defendant had attempted to discipline him after having learned that he had pushed a teacher at school. The victim testified that the defendant had grabbed him by his shirt, and that he had ducked and scraped his face against the defendant's ring, resulting in the bruise under his right eye. On cross-examination, he also testified that his mother had encouraged him to say that the defendant had hit him. The defendant declined to testify or to present any witnesses, relying on his cross-examination of the state's witnesses.

---

[3] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."

[4] General Statutes § 53a-182 (a) provides in relevant part: "A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . . (2) by offensive or disorderly conduct, annoys or interferes with another person . . . ."

At the close of the evidence, the defendant requested that the court instruct the jury on the parental justification defense provided by § 53a-18 (1) in light of the victim's testimony that his injuries had been sustained as a result of the defendant's attempt "to maintain discipline" as permitted by the statute. The court determined that the defendant had raised parental justification as a defense through his cross-examination of the state's witnesses but also concluded that the defense did not, as a matter of law, apply to the charge of risk of injury to a child. The court therefore agreed to instruct the jury on the parental justification defense only as to the charges of assault in the third degree and disorderly conduct. Following closing arguments, the trial court instructed the jury on the parental justification defense as it applied to the disorderly conduct and assault charges, but expressly instructed the jury that the defense did not apply to the risk of injury charge.[5] With respect to that charge, consistent with the judicial gloss established in *State* v. *Schriver*, 207 Conn. 456, 466, 542 A.2d 686 (1988), the trial court also instructed the jury that, in order to establish that the defendant had committed an "act likely to impair the health . . . of [a] . . . child"; General Statutes § 53-21 (a) (1); the state was required to prove beyond a reasonable doubt that the defendant had committed "blatant physical abuse that endangered the child's well-being." "The jury subsequently returned a verdict of not guilty on the charges of assault in the third degree and disorderly conduct, and a verdict of guilty on the charge of risk of injury to a child." *State* v. *Nathan J.*, supra, 99 Conn. App. 716.

---

[5] The trial court stated in relevant part: "To repeat the elements [of] assault in the third degree; did the defendant intend to cause physical injury to [the victim]? Did the defendant, acting with that intent, cause such physical injury to [the victim]?

"If the state has proven both [of] those essential elements, then you have to go on in that event and evaluate the defense of justification. I did not mention justification with respect to the risk of injury charge because justification is not a defense to that charge."

The defendant timely appealed from the judgment of conviction to the Appellate Court, claiming, inter alia, that the trial court improperly had instructed the jury that the parental justification defense did not apply to the charge of risk of injury to a child. The state countered that, because the trial court had instructed the jury that acts posing a risk to health under the risk of injury statute are limited to blatant physical abuse that endangers a child's physical well-being and because such abuse is inconsistent with the defense of reasonable parental discipline, no justification instruction was necessary. The Appellate Court agreed with the defendant, concluding both that the parental justification defense applied, as a matter of law, to conduct charged under § 53-21 (a) (1) and that it was reasonably possible that the trial court's instruction that the defense did not apply may have misled the jury and resulted in an injustice. Id., 717–18. The Appellate Court remanded the case to the trial court for a new trial on the charge of risk of injury to a child. Id., 718.

On appeal to this court, the state first claims that the Appellate Court improperly concluded that the parental justification defense applied, as a matter of law, to the offense of risk of injury to a child. To support this claim, the state contends that the Appellate Court failed to recognize that the blatant physical abuse required under the risk of injury statute is logically inconsistent with corporal punishment that is reasonably necessary for purposes of parental discipline, as required under this parental justification defense. The state claims in the alternative that, even if the parental justification defense may apply to a risk of injury charge as a matter of law, the Appellate Court improperly concluded that the defendant was entitled to an instruction on that defense under the facts of the present case. We reject both of the state's contentions.

I

We first address whether the Appellate Court properly concluded that, as a matter of law, the parental justification defense under § 53a-18 (1) applies to the charge of risk of injury to a child under § 53-21 (a) (1). To resolve this question, we must examine the relevant statutes, mindful of the dictates of General Statutes § 1-2z[6] and our well established rules of statutory construction. See *State* v. *Tabone*, 292 Conn. 417, 431–32, 960 A.2d 74 (2009). Our inquiry is also guided, however, by our prior case law construing these statutes. See *Hummel* v. *Marten Transport, Ltd.*, 282 Conn. 477, 501, 923 A.2d 657 (2007) ("[t]here is nothing in the legislative history to suggest that the legislature also intended to overrule every other case in which our courts, prior to the passage of § 1-2z, had interpreted a statute in a manner inconsistent with the plain meaning rule, as that rule is articulated in § 1-2z"). Because this issue presents a question of law, our review is plenary. *State* v. *Tabone*, supra, 432; *State* v. *Kirk R.*, 271 Conn. 499, 510, 857 A.2d 908 (2004).

We begin with the risk of injury statute. "[A]lthough it is clear that [t]he general purpose of § 53-21 is to protect the physical and psychological well-being of children from the potentially harmful conduct of [others] . . . we long have recognized that subdivision (1) of § 53-21 [a] prohibits two different types of behavior: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the [child's] moral or physical welfare . . . and (2) acts directly perpetrated on the person of the [child] and injurious to his [or

---

[6] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

her] moral or physical well-being." (Internal quotation marks omitted.) *State* v. *Gewily*, 280 Conn. 660, 668, 911 A.2d 293 (2006); see also *State* v. *Padua*, 273 Conn. 138, 148, 869 A.2d 192 (2005); *State* v. *Robert H.*, 273 Conn. 56, 65, 866 A.2d 1255 (2005). In the present case, the defendant was charged under the "act" prong of § 53-21 (a) (1).

In *Schriver*, this court addressed a constitutional vagueness attack on that prong of the statute. *State* v. *Schriver*, supra, 207 Conn. 461. The defendant had been convicted under that prong of § 53-21[7] after grabbing a thirteen year old girl by the waist and saying, "Don't worry, all I want to do is feel you." (Internal quotation marks omitted.) Id., 457. The court agreed with the defendant that, "[o]n its face, § 53-21 fails to articulate a definite standard for determining whether the conduct of the defendant in this case is permitted or prohibited. . . . Standing alone, the phrase 'any act' provides no guidance to potential violators, police officers, or juries . . . ." Id., 461. The court also agreed with the defendant that our prior case law had established a definitive gloss limiting the physical harm proscribed by the statute to instances of blatant physical abuse.[8] Id., 466. The court therefore concluded that the defendant's conviction must be vacated because his conduct fell short of the conduct at issue in those cases. Id., 468. Recognizing

---

[7] At the time of the offense in *Schriver*, and at the time that that decision was released, § 53-21 was codified in one paragraph, with no subsections or subdivisions, unlike the present codification.

[8] In particular, the court in *Schriver* cited to *State* v. *McClary*, 207 Conn. 233, 234–39, 541 A.2d 96 (1988) (six month old victim had suffered brain injury from violent shaking); *State* v. *Eason*, 192 Conn. 37, 38, 470 A.2d 688 (1984) (two year old victim had been severely beaten with belt), overruled in part by *Bulsen* v. *Manson*, 203 Conn. 484, 525 A.2d 1315 (1987); *State* v. *Martin*, 189 Conn. 1, 6, 454 A.2d 256 (child pushed into wall and then onto floor), cert. denied, 461 U.S. 933, 103 S. Ct. 2098, 77 L. Ed. 2d 306 (1983); *State* v. *Palozie*, 165 Conn. 288, 290–91, 334 A.2d 468 (1973) (child strapped, thrown against chair, hitting its head against floor). See *State* v. *Schriver*, supra, 207 Conn. 466.

that any effort to conform § 53-21 to the mandate of due process "would necessarily entail a wholesale redrafting of the statute"; id.; which is the exclusive province of the legislature, the court left in place the authoritative judicial gloss prescribed under our case law limiting the type of physical harm prohibited by the act prong of § 53-21 to instances of blatant physical abuse. Id., 466, 468. Other than changes affecting sentencing, the legislature has not substantively amended this provision of the risk of injury statute since our decision in *Schriver*. See footnote 7 of this opinion; see also *State* v. *Peeler*, 271 Conn. 338, 427–28, 857 A.2d 808 (2004) ("although legislative inaction is not necessarily legislative affirmation . . . we . . . presume that the legislature is aware of [this court's] interpretation of a statute, and that its subsequent nonaction may be understood as a validation of that interpretation" [internal quotation marks omitted]), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005).

We next turn to the relevant statutes and case law concerning the parental justification defense. Section 53a-18 enumerates circumstances in which physical force, which would otherwise constitute an offense, is justifiable and thus not criminal. That statute provides in relevant part: "A parent, guardian or other person entrusted with the care and supervision of a minor . . . may use reasonable physical force upon such minor . . . when and to the extent that he reasonably believes such to be necessary to maintain discipline or to promote the welfare of such minor or incompetent person." General Statutes § 53a-18 (1). General Statutes § 53a-16 dictates that "[i]n *any* prosecution for an offense, justification, as defined in sections 53a-17 to 53a-23, inclusive, shall be a defense." (Emphasis added.)

The text of § 53a-18 clearly and unambiguously indicates that it applies to *all* offenses involving a parent's use of reasonable force against a child. It contains no

exceptions or reservations from which we might infer that the legislature intended it to have anything less than a complete and comprehensive scope. Moreover, there is no exception to the expansive language of the general rule regarding justification defenses in § 53a-16 to exclude any substantive offenses from its coverage. Reading the two statutes together would appear to substantiate the Appellate Court's conclusion that there is no apparent *textual* reason to bar the application of § 53a-18 to a charge under the act prong of the risk of injury to a child statute, § 53-21 (a) (1). See *State* v. *Nathan J.*, supra, 99 Conn. App. 717.

Although the state does not challenge this reading of these statutes, it relies on General Statutes § 53a-2,[9] which dictates that the provisions of the Penal Code, including the parental justification defense, "shall apply to any offense defined in [the Penal Code] or the general statutes . . . *unless the context otherwise requires* . . . ." (Emphasis added.) The state claims that it would be logically inconsistent to apply the parental justification defense in the context of a risk of injury charge under § 53-21 (a) (1). Specifically, the state contends that the blatant physical abuse required under *Schriver* to establish risk of injury necessarily incorporates an assessment that a defendant's conduct toward a child is unreasonable, and proof that a defendant committed risk of injury would negate any claim that a parent engaged in reasonable discipline. We are not persuaded.

We first acknowledge that both the text and the genealogy of the parental justification defense underscore the centrality of a reasonableness inquiry to application of the defense. The language of § 53a-18 (1) clearly

---

[9] General Statutes § 53a-2 provides: "The provisions of this title shall apply to any offense defined in this title or the general statutes, unless otherwise expressly provided or unless the context otherwise requires, and committed on or after October 1, 1971, and to any defense to prosecution for such an offense."

provides that the defense only applies to *"reasonable physical force"* to the extent *"reasonably . . .* necessary to maintain discipline or to promote the welfare" of the child. (Emphasis added.) The commission to revise the criminal statutes, in drafting our Penal Code, specifically recommended that "reasonable" be inserted before "physical force" every time the latter phrase occurred in any justification provision. Commission to Revise the Criminal Statutes, Commentary on Title 53a, Penal Code (1969), p. 7. The purpose of the recommendation was to "emphasize that in all cases contemplated by these sections [concerning justification] the reasonableness of the force used must be judged objectively in the light of the circumstances then obtaining as well as in the light of the actor's belief." Id. The commission to revise the criminal statutes also specifically noted that the codification of the parental justification defense was "not intended to change the common law rule that such force must be reasonable." Id., p. 8; see also Commission to Revise the Criminal Statutes, Penal Code Comments, Conn. Gen. Stat. Ann. (West 1971) §§ 53a-16 through 53a-23, comment, p. 6.

Indeed, the common-law antecedents to § 53a-18 (1), which concerned corporal punishment by a teacher standing in loco parentis, emphasized that such punishment must be reasonable. See, e.g., *Sansone* v. *Bechtel*, 180 Conn. 96, 98, 429 A.2d 820 (1980) ("A teacher is a surrogate parent to his pupils. . . . This relationship imposes upon him a duty to maintain discipline in his classroom. . . . In discharging this duty the teacher is authorized to use reasonable means to compel a disobedient pupil to comply with his orders . . . including the use of corporal punishment." [Citations omitted.]); *Calway* v. *Williamson*, 130 Conn. 575, 579, 36 A.2d 377 (1944) ("In inflicting [corporal] punishment the teacher must exercise sound discretion and judgment, and must adapt it not only to the offense but to the offender.

. . . No precise rule can be laid down as to what shall be considered excessive or unreasonable punishment. . . . Each case must depend upon its own circumstances." [Citation omitted; internal quotation marks omitted.]). These cases also recognize that any analysis of reasonableness must consider a variety of factors and that such an inquiry is case specific. Indeed, this court has held that, "[i]n determining . . . what is a reasonable punishment, various considerations must be regarded, the nature of the offence, the apparent motive and disposition of the offender, the influence of his example and conduct upon others, and the sex, age, size and strength of the pupil to be punished. Among reasonable persons much difference prevails as to the circumstances which will justify the infliction of punishment, and the extent to which it may properly be administered." (Internal quotation marks omitted.) *Calway* v. *Williamson*, supra, 579.

The fundamental question, then, is whether a charge of risk of injury to a child, as limited by the *Schriver* gloss, necessarily incorporates an assessment of the reasonableness of a parent's injurious behavior toward his or her child, thus rendering the parental justification defense inconsistent with that offense. We conclude that it does not.

We first examine the meaning of each of the operative terms in the gloss—blatant physical abuse. Because neither the legislature nor this court has addressed the meanings of either "blatant" or "physical" we look to dictionary definitions to determine the commonly approved meaning of those words. See *Garcia* v. *Hartford*, 292 Conn. 334, 345, 972 A.2d 706 (2009). The relevant definition in Webster's Third New International Dictionary provides that "blatant" means "obtrusive in an offensive manner . . . completely or crassly obvious . . . ." See also Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) (defining blatant as "completely obvious, conspicuous, or obtrusive, esp. in a crass or

offensive manner"); The American Heritage Dictionary of the English Language (3d Ed. 1992) (defining blatant as "[t]otally or offensively conspicuous or obtrusive"). The word "physical" encompasses anything relating to the body. See The American Heritage Dictionary of the English Language, supra (defining physical as "of or relating to the body as distinguished from the mind or spirit"); Merriam-Webster's Collegiate Dictionary, supra (defining physical as "of or relating to the body . . . concerned or preoccupied with the body and its needs"). Neither of these terms by their ordinary meaning incorporates nor suggests a reasonableness component. Moreover, contrary to the state's position at oral argument, we have not found a single authoritative source, defining blatant as egregious or any like term.[10]

We next turn to the term "abuse." Although the statute concerning risk of injury to a child does not provide

---

[10] The *Schriver* gloss is sometimes framed as requiring "deliberate, blatant abuse" rather than "blatant physical abuse." See, e.g., *State* v. *Kulmac*, 230 Conn. 43, 64 n.15, 644 A.2d 887 (1994) ("[i]n [*Schriver*] . . . we held that if the risked impairment is to the child's health . . . § 53-21 proscribes 'deliberate, blatant abuse' that imperils the child's physical, rather than mental, well-being"); *State* v. *Owens*, 100 Conn. App. 619, 641, 918 A.2d 1041 (*Flynn, C. J.*, dissenting) ("[i]n [*Schriver*] . . . our Supreme Court recognized 'an authoritative judicial gloss that limits the type of physical harm prohibited by § 53-21 to instances of deliberate, blatant abuse'"), cert. denied, 202 Conn. 927, 926 A.2d 668 (2007); *State* v. *Anderson*, 86 Conn. App. 854, 859 n.3, 864 A.2d 35 ("[o]ur Supreme Court has held [in *Schriver*] that the statute is not unconstitutionally vague because authoritative judicial gloss circumscribed 'the type of physical harm prohibited by § 53-21 to instances of deliberate, blatant abuse'"), cert. denied, 273 Conn. 924, 871 A.2d 1031 (2005). Looking to the commonly accepted meaning of deliberate, it is evident that including the term in the gloss merely requires that the abuse be intentional, conscious and wilful. See Black's Law Dictionary (9th Ed. 2009) (defining deliberate as "[i]ntentional; premeditated; fully considered"); The American Heritage Dictionary of the English Language, supra (defining deliberate as "[d]one with or marked by full consciousness of the nature and effects; intentional"). As wilfulness is already a requirement of the risk of injury statute and neither intentionality nor consciousness incorporates any analysis of reasonableness, including the term "deliberate" does not impact our analysis of the relationship between the *Schriver* risk of injury gloss and the parental justification defense.

a definition of abuse, the legislature and the courts have nonetheless defined the term in the analogous context of child abuse proceedings.[11] General Statutes § 46b-120 (4) (A), pertaining to juvenile matters, defines an abused child as a child who "has been inflicted with physical injury or injuries other than by accidental means . . . ."[12] See also *Daniels* v. *Alander*, 75 Conn. App. 864, 886, 818 A.2d 106 ("whether a child, sibling or parent is under a threat of mistreatment or abuse [means] that a child had physical injuries inflicted on him or her other than by accidental means"), aff'd, 268 Conn. 320, 844 A.2d 182 (2004). Abuse, therefore, merely requires nonaccidental physical injury and does not take into account the factors that inform the parental justification defense. See *Lovan C.* v. *Dept. of Children & Families*, 86 Conn. App. 290, 299, 860 A.2d 1283 (2004) (concluding that, although § 46b-120 [4] [A] only requires nonaccidental injury, parental justification defense implicates additional concerns when parents are involved).

---

[11] Similarly, General Statutes § 17a-247a (1), pertaining to employees of the department of developmental services, defines abuse as "the wilful infliction by an employee of physical pain or injury," and General Statutes § 17b-450 (4), pertaining to protective services for the elderly, defines abuse as including "the wilful infliction of physical pain, injury or mental anguish . . . ." Because the term "abuse" is defined by statute and case law, we do not resort to the dictionary meaning. We note, however, that Black's Law Dictionary defines abuse as "[p]hysical or mental maltreatment, often resulting in mental, emotional, sexual or physical injury." Black's Law Dictionary (9th Ed. 2009). Although "maltreatment" suggests a more substantive component than mere nonaccidental physical injury, it still does not inexorably incorporate any consideration of the reasonableness of a parent's behavior.

[12] General Statutes § 46b-120 provides in relevant part: "The terms used in this chapter shall, in its interpretation and in the interpretation of other statutes, be defined as follows . . . (4) '[A]bused' means that a child or youth (A) has been inflicted with physical injury or injuries other than by accidental means, or (B) has injuries that are at variance with the history given of them, or (C) is in a condition that is the result of maltreatment such as, but not limited to, malnutrition, sexual molestation or exploitation, deprivation of necessities, emotional maltreatment or cruel punishment . . . ."

As a result, "[i]n a substantiation of abuse hearing, if it is shown that a child has sustained a nonaccidental injury as a result of *parent* administered corporal punishment, the hearing officer must [then] determine whether the punishment was reasonable and whether the parent believed the punishment was necessary to maintain discipline or to promote the child's welfare." (Emphasis added.) Id. Thus, this separate analysis of reasonableness does not come into play simply by virtue of an allegation of "abuse," but instead only when a parent is involved and the circumstances indicate that discipline may have been the motivation for the conduct. In *Lovan C.*, the Appellate Court reasoned that, without such a limitation, any parent who "administers corporal punishment that potentially leaves marks on a child" would be at risk for a finding of abuse in a substantiation of abuse hearing. Id., 298. Under this framework, abuse always consists of two primary elements—(1) physical injury, and (2) wilfulness—but, in order to respect the legislature's intent to protect parents from reprisal for reasonable physical discipline of their children, any substantiation of abuse hearing against a parent also must include a *separate* evaluation of reasonableness. See *State* v. *Brocuglio*, 56 Conn. App. 514, 518, 744 A.2d 448 ("there exists a parental right to punish children for their own welfare, to control and restrain them and to adopt disciplinary measures in exercise of that right"), cert. denied, 252 Conn. 950, 748 A.2d 874 (2000); *State* v. *Leavitt*, 8 Conn. App. 517, 521–22, 513 A.2d 744 ("[t]he language [of § 53a-18] . . . demonstrates the public recognition of the parental right to punish children for their own welfare"), cert. denied, 201 Conn. 810, 516 A.2d 886 (1986). Of course, in the present case, the fact finder is not the department nor the prosecutor; it is the jury, and it is clear that the jury in the present case was not instructed to consider the reasonableness of the defendant's conduct. Rather,

the jury was merely directed, in accordance with the *Schriver* gloss, to consider whether the defendant's conduct was blatant physical abuse and expressly was told not to consider the parental justification defense in connection with the risk of injury charge. See footnote 5 of this opinion.

Neither the statutes nor any related case law provide any support for the contention that the *Schriver* gloss explicitly or implicitly involves an evaluation of reasonableness. Indeed, under the *Schriver* gloss, a forceful spanking might well qualify as blatant physical abuse because it is an obvious, wilful, nonaccidental force against a child. Cf. *State* v. *Anderson*, 86 Conn. App. 854, 863–64, 864 A.2d 35 (causing bloody nose by striking child in face sufficient to constitute blatant physical abuse), cert. denied, 273 Conn. 924, 871 A.2d 1031 (2005). The parental justification defense, however, provides that such force is not criminal, as long as it is reasonable, when directed by a parent, or someone standing in loco parentis, against a child for disciplinary purposes. If the force is unreasonable, or if it is employed by a stranger, however, the parental justification does not apply and the force may constitute risk of injury. The parental justification defense requires juries to distinguish between parents and nonparents, and between reasonable and unreasonable force. Without an instruction on the defense, a jury would have no reason, and in fact, no right, to consider the reasonableness of the parent's actions.

For these reasons, the offense of risk of injury to a child under § 53-21 (a) (1) is not logically inconsistent with the defense of parental justification. We therefore conclude that the Appellate Court properly determined that, as a matter of law, the parental justification defense may apply to a charge of risk of injury to a child under § 53-21 (a) (1).

## II

Having determined that the parental justification defense pursuant to § 53a-18 may apply to § 53-21 (a) (1), we next address whether, under the facts of this case, the Appellate Court properly decided that the defendant was entitled to an instruction on the defense. The state claims that the defendant was not entitled to such an instruction because he did not proffer evidence or argue explicitly or implicitly that he intentionally had hit the victim or that such force had been administered to maintain discipline. We disagree.

Our resolution of this question is guided by certain well settled principles. "[A] fundamental element of due process of law is the right of a defendant charged with a crime to establish a defense. . . . Where, as here, the challenged jury instructions involve a constitutional right, the applicable standard of review is whether there is a reasonable possibility that the jury was misled in reaching its verdict. . . . In evaluating the particular charges at issue, we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted.) *State* v. *Ebron*, 292 Conn. 656, 685, 975 A.2d 17 (2009); see also *State* v. *Ash*, 231 Conn. 484, 493–94, 651 A.2d 247 (1994). In reviewing the trial court's rejection of the defendant's request for a jury instruction on § 53a-18, we adopt the version of the facts most favorable to the defendant that the evidence would reasonably support. *State* v. *Clark*, 264 Conn. 723, 731, 826 A.2d 128 (2003).

Equally important, we note that a justification defense, including the parental justification defense, is

an element of a criminal prosecution on which the state bears the burden of proof. *State* v. *Ebron*, supra, 292 Conn. 695 ("justification defenses differ from affirmative defenses in that the state, and not the defendant, bears the burden of disproving a justification defense such as self-defense beyond a reasonable doubt, and are of constitutional dimension because they negate an element of the crime charged"); *State* v. *Preyer*, 198 Conn. 190, 199, 502 A.2d 858 (1985) ("lack of justification is an element of criminal prosecution on which the state bears the burden of proof"). The defendant, however, bears the initial burden of producing sufficient evidence to warrant submitting a defense to the jury; see *State* v. *Clark*, supra, 264 Conn. 730; but may rely on evidence adduced either by himself or by the state to meet this evidentiary threshold. *State* v. *Lewis*, 245 Conn. 779, 810, 717 A.2d 1140 (1998). To satisfy this burden, the evidence adduced at trial must be sufficient to raise a reasonable doubt in the mind of a rational juror as to whether the defendant's actions were justified. See *State* v. *Clark*, supra, 731. "This burden is slight, however, and may be satisfied if there is *any foundation* in the evidence [for the defendant's claim], no matter how weak or incredible . . . ." (Emphasis added; internal quotation marks omitted.) Id., 730–31.

Finally, it is axiomatic that a defendant may present inconsistent defenses to the jury. *State* v. *Person*, 236 Conn. 342, 349, 673 A.2d 463 (1996). In fact, a defendant may be entitled to jury instructions reflecting inconsistent theories of defense even if evidence presented by the defendant directly contradicts one of the theories of defense. See *State* v. *Small*, 242 Conn. 93, 118, 700 A.2d 617 (1997) (*Borden, J.*, concurring) ("the defendant is entitled to a jury instruction on inconsistent defenses, including a theory of defense that his testimony squarely contradicts, where there is evidence that

supports the inconsistent defenses"); *State* v. *Person*, supra, 350 ("no rule of law prevents a jury from being charged, when requested, on the defense of extreme emotional disturbance simply because the defendant has testified that he or she was not upset").

Turning to the present case, the state's witnesses injected the issue of parental justification into the trial sufficiently to raise a reasonable doubt in the mind of the jury as to whether the defendant's actions were justified as parental discipline. The evidence clearly suggested that the victim's injury had occurred in the context of the defendant confronting the victim about the victim's misbehavior at school. The victim himself testified that, during the confrontation, the defendant had been angry about the victim's behavior, and had asked the victim why he had pushed the teacher. In addition, on both direct and cross-examination, the victim characterized his bruise as an accidental injury sustained when the defendant had pulled his shirt to try to discipline him. Although the state challenged the credibility of that testimony, viewing the evidence in the light most favorable to the defendant; *State* v. *Clark*, supra, 264 Conn. 731; there was a sufficient foundation for the defendant's claim of parental justification. Moreover, neither the fact that the defendant asserted inconsistent defenses, nor the fact that he elicited testimony and made arguments inconsistent with the parental justification defense precluded the justification instruction in light of the evidence supporting the defense. *State* v. *Person*, supra, 236 Conn. 350. Indeed, the trial court did instruct the jury that the parental justification defense applied to the charges of assault in the third degree and disorderly conduct without objection by the state. The state provides no explanation why, as a matter of evidence, the parental justification defense would be warranted as to the charges of assault in the third degree and disorderly conduct but not as to the

risk of injury to a child charge. Thus, the state's claim on appeal that the evidence at trial did not warrant a parental justification defense instruction simply because the defendant never presented any evidence or argument that his actions were justified as reasonable corporal punishment rings hollow.

Because the trial court explicitly instructed the jury that the parental justification defense did not apply, and because the trial court's instructions on the elements of the risk of injury to a child[13] did not ensure that the jury would undertake the requisite reasonableness analysis,

[13] The trial court instructed the jury that, to be guilty of risk of injury to a child, the defendant must have committed "blatant physical abuse that endangered the child's well-being." As we have indicated, the *Schriver* gloss of "blatant physical abuse" does not entail any evaluation of reasonableness. Nor does the phrase "endangered the child's well-being" fill the void. Notably, that phrase is not even a part of the act prong of § 53-21 (a). Rather, that phrase seems to be adopted from the situation prong of the statute, which criminalizes "wilfully or unlawfully caus[ing] or permit[ting] any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired . . . ." General Statutes § 53-21 (a) (1); see also *State* v. *Na'im B.*, 288 Conn. 290, 297, 952 A.2d 755 (2008). The reach of the situation prong of § 53-21 (a) (1) is actually broader than that of the act prong. See *State* v. *Payne*, 240 Conn. 766, 782, 695 A.2d 525 (1997) ("because a defendant need not touch a child in order to violate the [portion of § 53-21 that proscribes placing a child in a situation where its life is endangered or its health is likely to be injured, or its morals likely to be impaired], but can be prosecuted under that part for creating a situation likely to endanger the psychological or physical well-being of a child, we conclude that [that portion] of the statute is not limited to prosecuting injury to a child resulting from deliberate, blatant, physical abuse"), rev'd in part on other grounds by *State* v. *Romero*, 269 Conn. 481, 491, 849 A.2d 760 (2004). To the extent that the two prongs of § 53-21 (a) (1) prohibit different behavior; see *State* v. *Gewily*, supra, 280 Conn. 668; *State* v. *Robert H.*, supra, 273 Conn. 65; engrafting the language of the situation prong onto an instruction regarding the act prong did not ensure that the jury engaged in the reasonableness analysis required under the parental justification defense. The trial court's instruction that the jury consider whether the defendant's conduct endangered the victim's well-being therefore did not obviate the need for an instruction on the parental justification defense, and thus did not cure the trial court's failure to instruct on that defense as to the risk of injury charge.

there is a reasonable possibility that the jury was misled in reaching its verdict. Accordingly, the defendant is entitled to a new trial on the charge of risk of injury to a child. See *State* v. *Hampton*, 293 Conn. 435, 458, 978 A.2d 1089 (2009) ("[a]n [impropriety] in instructions in a criminal case is reversible [impropriety] when it is shown that it is reasonably possible for [improprieties] of constitutional dimension or reasonably probable for nonconstitutional [improprieties] that the jury [was] misled").

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.